IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF KENNEBEC,

ARGUED AT JUNE TERM, 1845.

FRANCIS M. ROLLINS *versus* MOSES TABER.

It is generally true, that if one of two joint contractors pays money, for which they may have made themselves jointly liable, an implied undertaking on the part of the other is inferred, that he will reimburse his co-promisor for the one half of the amount so paid. But if the debt were originally due from some third person, and the security had been given therefor by the co-promisors in consideration of funds furnished by him, sufficient for the purpose, with which it was agreed the debt should be paid, and such funds had been entrusted to the management of him who had been compelled to pay the amount in discharge of the joint promise, and he had not been careful to appropriate the funds according to agreement, no promise could be implied, that he should be reimbursed for any portion of the amount he might have been compelled to pay on the joint contract.

Where co-promisors, being assignees of the property of an insolvent man, give their note to a third person, as such assignees, in payment of a debt before due from their assignor, with a reliance for the means of paying it upon the funds in their hands by virtue of the assignment, specially appropriated for that purpose, equity would consider the assignees as substituted for such third person in reference to such funds, and the law could not consider them otherwise.

If one has an interest merely in the question, as he may stand in a similar condition as that of the party calling him, he is a competent witness.

ASSUMPSIT for money paid, laid out and expended.

The action was submitted to the decision of a referee, subject to the right of either party to have the referee report to the

Court such questions of law, as might be raised in the case, to be decided by the Court.

The plaintiff proved, that on June 3, 1834, a note was made to the Central Bank by the plaintiff, the defendant and one Mower, as the assignees of one Dow, for $3,200, payable in sixty days; that upon this note at August Term, 1840, of the District Court, the bank took judgment against all the signers for $857,93, debt, and $9, costs of suit, for the balance then due; and that the execution issued upon that judgment was, on Sept. 15, 1840, duly levied upon land of the plaintiff. This action was brought against the defendant for a contribution.

It appeared from the report of the referee, that this note was given to pay two drafts of $1500 each, drawn by the plaintiff and indorsed by the defendant and John G. Fitch, on Franklin Dow, and by him accepted, and which had become the property of the Central Bank.

It also appeared from the report, that the defendant resisted the plaintiff's claim on these grounds — that Dow, on May 21, 1834, had executed to Rollins, Taber and Fitch, a bill of sale of certain property to secure them for their liability for him on certain notes and drafts, including the drafts above mentioned, but no delivery of the property was shown; that on the same day, Dow executed a general assignment of the same and other property, including a quantity of leather partly tanned, to Rollins, Taber and Mower for the benefit of his creditors, which was also executed by them and by certain creditors of Dow, and wherein it was stipulated, that the assignees should turn the property into money, and "first pay to the Central Bank two drafts for $1500 each, now held by said bank, drawn by the said Rollins, accepted by said Dow, and indorsed by the said Taber and Fitch, and pay all costs and charges concerning the same, so as fully to indemnify all the parties thereto;" that Dow, Fitch and Mower testified, that it was intended to take the place of the other instrument, to which Fitch assented, because the drafts in the Central Bank were first to be paid, and the referee was satisfied, that it was so

intended; "that the plaintiff, by the agreement and consent of his colleagues, became the acting assignee, and as such received the property assigned, and in that capacity disposed of the property ; and that his subsequent management thereof was as acting assignee under the general assignment." Dow and Mower were called by the defendant as witnesses, and were objected to on the part of the plaintiff as incompetent from interest. They were admitted by the referee. It was also proved, that the plaintiff, as acting assignee, was enjoined by his colleagues to adhere to this preference.

The referee then stated the manner in which the plaintiff received funds from the property assigned, and the times when they were received, and concluded as follows : —

" He is satisfied, that the plaintiff is chargeable with available funds, from the property assigned, wherewith to have paid the Central Bank. That until that debt was paid, he had no right to detain funds for his own debt, or for other debts, which were subsequent, according to the assignment.

The counsel for the plaintiff raises the following points, which are given in his own language.

1. The defendant, being a co-promisor in the note to the Central Bank, is liable to an action for contribution ; but for the same reason that no action will lie by one of the assignees against another, for liabilities incurred as assignee, the defendant cannot avail himself of any such liability in defence of this action. The objection, in reason and principle, is the same, whether the party seeks an accountability in one form or the other. It is an attempt to evade the principle, by obtaining the same result in a different way.

2. Dow having made a specific provision for the two drafts in the Central Bank, previous to his general assignment, that fund should first have been exhausted, and until the defendant has proved an application of all that fund, he cannot resort to the provision made in the general assignment.

3. It is a legitimate inference from the fact, that such specific provision was thus made, that Rollins, Mower and Taber relied upon that provision, and assumed the debt personally

upon the strength of it. By doing which, they acquired a new relation to the creditor and between themselves, which was independent of the assignment. Styling themselves assignees in the note, does not change that relation, but is only *descriptio personarum.* Whether they have a right to reimburse themselves out of the property assigned is another question.

4. If Dow's assignment was invalid, for being conceived in fraud, and consummated in something worse, it is wholly unavailable to either party in an action at law. *In pari delicto, melior est conditio possidentis.* It was fraudulent, if made to cover the property, and was not designed to be carried out, according to its terms. [ By the referee : — Dow's assignment was not proved to have been fraudulent before the referee.]

5. But if the assignment was originally valid, there was a subsequent abandonment of it, by not proceeding to sell the property according to its directions, by suffering Dow to retain the property real and personal in his own hands, and to manufacture the hides assigned, into leather, *there having been no stipulation therefor in the assignment,* using the bark assigned for tanning stock not assigned, [leather belonging to others not assigned, was tanned with the same bark,] by permitting Dow to appropriate debts and other property to his own use, by Dow paying debts himself provided for in the assignment, which he would not and could not have done, if the property assigned had not been restored to him, by paying the drafts to the Central Bank in a way different from the directions in the assignment, &c., &c., &c. Whether it was good management or not, it was a departure from the directions of the assignment by all concerned, and they are now precluded from requiring a strict conformity to these directions.

6. But the plaintiff does not necessarily ask for any modification of his liability. By taking up the drafts in the Central Bank and giving their own note, the assignees did thereby first pay the two drafts to the bank, within the meaning and terms

of the assignment, and it was not less a payment, because made by their note instead of money. It was a literal and virtual compliance, so far as every body but themselves were concerned, with the directions of the assignment. A new contract was made, differing in form and in the time of performance, and the old concern was relieved from the debt.

7. But if this note had still continued to be the debt of the assignees, and they liable as such, by giving a new note on time, the other debts being then due, a precedence is voluntarily given to the other debts, and the defendants cannot now insist on the priority of the Central Bank.

8. If the assignees have a right to reimburse themselves for money paid to the Central Bank, it is a right common to them all; and neither Taber, nor Mower, has a right to require Rollins, to secure property for him. Mower has secured himself, by retaining property in his hands, and if Taber has not, it is not our fault.

9. Nathan Mower was not a competent witness, because the necessary consequence of charging Rollins is to discharge himself from his accountability to Dow and the creditors, who are parties to the assignment, for the same property.

10. Franklin Dow was not a competent witness for the defendant, because the effect of charging the plaintiff is to increase the assets, and consequently the amount of *surplus* which is to go to him, and particularly the property now retained by Nathan Mower.

The award of the referee is made, subject to the opinion of the Court upon the points raised. Submitting to their revision, he finds that the defendant never promised, in manner and form, as the plaintiff has declared against him ; and he accordingly awards that the defendant recover of the plaintiff, costs of Court, to be taxed according to law, and costs of reference taxed at twenty-seven dollars and sixty-eight cents."

*H. A. Smith,* for the plaintiff, contended, that the giving the note to the bank, " as assignees," was a mere description of the persons, and matter of form only, and would apply as well to the first as to the second assignment ; that in giving

the note, the parties acted independently of the assignment, and the only relation between them, so far as that note was concerned, was that of co-promisors, and as such each was liable to him who paid the whole for contribution, and went into an examination of the facts stated by the referee upon which he relied; that they assumed this liability upon the strength of the previous assignment to them of property to pay the drafts; that it was no part of their duty as general assignees, to assume the debts personally, and, therefore, in giving the note, they acted as individuals, independently of the assignment, and not as assignees; that the plaintiff was willing to account for all the property he had received, if they would allow all his disbursements, but that they objected to this because the note to the bank was not first paid; that the defendant could not avail himself of the provisions of the assignment in this action; that an assignee could not be made to account to his co-assignee in an action at law; that the defendant should not be allowed to avail himself, as set-off, of claims which could not be made the subject of an action by him; that the principle was the same whether the party sought an accountability in one form or another; and that the accountability of one as assignee could not be set off against the liability of the other as co-promisor. He argued in support of the several positions taken before the referee; and cited *Hays* v. *Jackson*, 6 Mass. R. 149; *Amory* v. *Francis*, 16 Mass. R. 308; *Aldrich* v. *Cooper*, 8 Vesey, 382.

*Emmons*, for the defendant, said that it was unnecessary to examine particularly the questions of law, which had been raised at the hearing before the referee by the counsel for the plaintiff, and urged in the argument here. The *facts*, stated in the report of the referee, which were adverted to by the counsel, furnish a sufficient answer to most of them.

The report shows, as matter of fact, that the first assignment was given up, and abandoned; and that Fitch, one of the parties to it, gave his assent to this course, on the ground, that the drafts on which he was liable, were first to be paid

out of the property assigned by the second instrument. To divert the funds to other objects would have been a fraud upon him on the part of the assignees. All the arguments of the plaintiff's counsel, based on the supposition that the assignees acted under the first assignment, or gave the note in consideration of it, are wholly irrelevant.

The facts show, also, that the plaintiff acted, in collecting and receiving the funds, under the general assignment, and he was bound to appropriate the money received in accordance with its provisions; and that he was enjoined by his colleagues to adhere to this preference of first paying the Central Bank. He cannot deny, therefore, that he received the funds for that purpose.

The facts, also show, that before the suit was commenced, which was the foundation of the proceedings under which the levy was made, the plaintiff had received funds more than sufficient to have paid that demand. It was his duty to have paid the money to the bank. The levy of the execution upon the plaintiff's real estate, was but a compulsory payment of the very note which he was bound in duty and in law to have paid voluntarily from the funds in his hands. The conversion of the proper funds for that purpose to his own use, or the misappropriation of them to other purposes, and paying the note out of his other property, could give him no legal or equitable claim against the defendant for contribution.

The objections made to the competency of the witnesses are groundless. This decision could not be used for or against them. An interest in the question goes only to the credibility, not the competency of a witness.

The opinion of the Court was drawn up by

Whitman C. J. — The plaintiff and defendant, and one Mower, were co-promisors in a note, made by them to the Pres. D. & Co. of the Central Bank, for a large sum of money, of which, at the August Term of the District Court, at Augusta, in 1840, the sum of $857,93, was found to be due; and judgment was then rendered therefor, with costs of

suit, taxed at nine dollars, against the promisors; and execution thereon was subsequently issued, and levied upon the property of the plaintiff. He now seeks to recover of the defendant the one third part thereof.

It is generally true, that, if one of two joint contractors pays money, for which they may have made themselves jointly liable, an implied undertaking on the part of the other is inferred, that he will reimburse his co-promisor for the one half of the amount so paid. But if the debt were originally due from some third person, and the security had been given therefor by the co-promisors, in consideration of funds furnished by him, with which it was agreed the debt should be paid, and such funds had been intrusted to the management of him, who had been compelled to pay the amount in discharge of the joint promise, and he had not been careful to appropriate the funds according to agreement, no promise could be implied, that he should be reimbursed for any portion of the amount he might have been compelled to pay on the joint contract. The defence, in this case, is, that the plaintiff has been furnished with such funds, and has omitted to apply them as had been agreed.

Whether such was the fact or not was submitted to a referee, by rule of Court, by consent of parties, to be ascertained; and he has reported in favor of the defendant. The reference, however, was with a reservation as to any questions of law, which might arise in the investigation, which were to be, by the referee, reported for the consideration of the Court.

The questions of law made by the counsel for the plaintiff, and reported by the referee, are numbered from one to ten inclusive; and certainly savor very much of subtilty, and an over nice attempt at shadowy distinctions. The first would seem to be rather a *felo de se*. It is, that co-assignees cannot recover of each other for any liability, either as such assignee, may incur; and yet the plaintiff's claim is founded upon such a liability. The three co-promisors were the assignees of the estate of one Dow, and had given the note, on which the action against them was founded, as such assignees. Some of

the other questions are predicated upon an assignment, or assignments, made previously to the one under which the plaintiff acted; and upon obligations supposed to arise out of them. But nothing can be more manifest than that those pre- vious assignments were all waived by and merged in the one under which the plaintiff acted. One other of the questions relied upon is, that, as the co-promisors gave their joint note to the bank for the debt in question, before due from their assignor, they thereby paid it, and so that Dow's funds, in their hands, were thereby released from the priority attached to them, by the assignment, for that debt; and, thereupon, that the other creditors of Dow were let in to claim them. But the assignees had given their note, as such assignees, and, unquestionably, with a reliance, for the means of paying it, upon the funds in their hands, by virtue of the assignment, specially appropriated for that purpose. Equity would con-- sider them as substituted for the bank, in reference to such funds, and the law could not consider them otherwise. And, moreover, there is not any pretence that the other creditors of Dow ever attempted, upon any such ground, to interfere with the funds assigned.

Two of the questions made were, as to the competency of witnesses admitted to testify before the referee, viz: the co-as-- signee, Mower, and the assignor, Dow. But it is difficult to see upon what ground they should have been excluded. The decision in this case could not be used for or against either of them. It is not apparent that Dow could be affected, even remotely, by it, in any event. Mower may be considered as having an interest merely in the question, as he may stand in a similar condition as that of the defendant; but this could not affect his competency.

*Report accepted.*