Smith *v.* Morrill.

---

FRANCIS O. J. SMITH *versus* LEVI MORRILL.

A blank indorsement of a negotiable promissory note is, as between the immediate parties thereto, only *prima facie* evidence of the contract implied by law; and it is competent to prove by parol evidence, the agreement which was in fact made at the time of the indorsement.

As to third persons, without notice of any other contract, the one implied by law is conclusive.

In an action by one indorser who had paid the note, against another for contribution, it is competent for the plaintiff to prove, that it was "verbally agreed by all the indorsers, previous to indorsing, that their indorsements should be joint and not several; and that, in the event of liability thereon, and the payment thereof by either, of the whole amount of the note, each should pay to the one thus paying, his equal proportion of the amount thus paid, as joint and not as several indorsers."

Proof of such agreement would make the indorsers, as between themselves, co-sureties, and payment of the whole debt by one, would authorize the maintenance of suits by the one so paying, against each of the others for their proportional parts, upon counts for money paid for their use.

ON REPORT from *Nisi Prius*, WALTON, J., presiding. ASSUMPSIT for money paid.

The plaintiff introduced three notes, signed by the treasurer of the York and Cumberland Railroad Company, payable to Daniel Hayes, and indorsed by the latter, plaintiff, defendant and others. It was proved that one Williams recovered, at a previous term, several judgments on said notes

against the several indorsers, and collected the whole amount of the plaintiff. The plaintiff claimed to recover of the defendant contribution, upon the ground that the indorsers were joint and not several, and offered to prove that it was " verbally agreed by and between all the indorsers, previous to indorsing, that their indorsements should be joint and not several; and that, in the event of liability thereon, and the payment thereof by either, of the whole amount of said notes, each should pay to the one thus paying his equal proportion of the amount thus paid, as joint indorsers and not as several."

The case was withdrawn from the jury and submitted to the full Court, with the agreement that, if the evidence offered was admissible, the case was to stand for trial.

*F. O. J. Smith,* pro se.

*S. C. Strout,* for the defendant.

WALTON, J.—The indorsement of a note in blank is *prima facie* evidence of a contract between the indorser and the indorsee, the terms of which are tolerably well defined in law, and generally understood among business men. There are many *dicta* to the effect that the contract implied in a blank indorsement is to be regarded as a written contract, not to be varied by parol evidence; but an examination of adjudged cases will show that this is true only to a limited extent. *Prima facie* the instrument is presumed to exhibit truly the rights and liabilities of all the parties to it, but this presumption is not always conclusive: it may sometimes be controlled by evidence, written or verbal, *dehors* the instrument. Perhaps it would have been better, had it been uniformly held, that blank indorsements, like contracts written out in full, have a fixed legal character, not depending, for their meaning, upon the vague and often uncertain recollection of witnesses, and imperfect understanding of the parties. But this has not been done. A strong desire to decide each particular case according to its

apparent equity, has had the effect to establish a different doctrine; namely, "that, as between the immediate parties, a blank indorsement is *prima facie* evidence only of the contract which they have made."

In *Smith* v. *Barber*, 1 Root, 207, the first question made was whether parol evidence might be admitted to explain the blank indorsement and the intent of the parties therein, and the Court held the evidence admissible; that a blank indorsement, until it is filled up, has no certain import; that it may be for one purpose or another, or none at all. In *Brewster* v. *Dana*, 1 Root, 267, it is said by the Court, that a blank indorsement has no certain import until filled up. In *Barker* v. *Prentiss*, 6 Mass., 430, the indorsement was in blank, which implies, *prima facie*, an absolute transfer of the note, but the Court held that parol evidence was admissible to show what the real contract was, and that the note was indorsed for collection only. The same doctrine was advanced in *Herrick* v. *Carman*, 10 Johns., 224. Same in *Lawrence* v. *Stonington Bank*, 6 Con., 521. In *Boyd* v. *Cleveland*, 4 Pick., 525, the plaintiff was permitted to show by parol evidence that, at the time of the indorsement of the note to him, the defendant agreed to pay it if the maker did not, and that the implied conditions requiring demand and notice were dispensed with. Same in this State; *Fullerton* v. *Rundlett*, 27 Maine, 31.

In *Weston* v. *Chamberlain*, 7 Cush., 404, the precise question was determined which is raised in this case; namely, whether a prior indorser of a promissory note, can maintain an action for contribution against a subsequent indorser, on proving that, by an oral agreement between the indorsers at the time of indorsing the note, they were, as between themselves, co-sureties; and the Court held that he could. The same doctrine was affirmed in *Clap* v. *Rice*, 13 Gray, 403. Also in *Phillips* v. *Preston*, 5 How., U. S. R., 278; (16 Curtis, 396.) And in *Talcott* v. *Cogswell*, 3 Day, 512, where a note already indorsed by the payee for the accommodation of the maker, was objected to without another

name on the back, and the plaintiff thereupon indorsed his name under that of the payee, and the note was afterwards discounted at a bank, and the maker failed to take it up, and both indorsers were notified, and each went separately to the bank and paid one half of the note, and the second indorser sued the first to recover the one half of the amount of the note which he had paid, the Court were of opinion that *the circumstances of the case* furnished sufficient evidence that the indorsement was *joint;* and that each having paid what, in that case, each would be compellable to pay, the verdict ought to be for the defendant. The jury, however, although sent out three times, persisted in finding a verdict for the plaintiff.

It is idle to attempt to reconcile these decisions with the doctrine that a blank indorsement is in effect a contract in writing not to be varied by parol, and that in these cases it is not varied. In all these cases the contracts, implied in the blank indorsements, are varied, in fact swallowed up and extinguished, so far as they are in conflict, by the express verbal agreements. So far as both are alike, or not in conflict, both are permitted to stand. But when they are in conflict, the implied contract yields, and the express contract, whether written or verbal, prevails.

In *Taunton Bank* v. *Richardson*, 5 Pick., 436, the plaintiffs offered to prove that, by a verbal agreement, made prior to the indorsement of the note in suit, demand and notice had been dispensed with. This was resisted upon the ground that it would vary the written contract created by the blank indorsement. The answer of the Court was "that the evidence did not attempt to change the contract, but to show that a condition beneficial for the defendants had been *waived* by them; that they had agreed to dispense with notice, not that by the contract itself notice would not be necessary." It is not surprising that legal minds should not rest satisfied with the logic of this decision. If by a previous or contemporaneous verbal agreement an important condition of a written contract is waived, is not the written con-

tract *varied* by the verbal agreement? And is not the rule violated, which holds that all previous and contemporaneous negotiation and discussion on the subject, are merged, or extinguished, by the writing, and cannot be shown to vary it? If not, then one condition after another might in this way be waived, until nothing would be left of the written contract, and yet the rule referred to would not be violated. Conditions in written contracts may unquestionably be waived by subsequent verbal agreements, without violating any rule of law, but not by previous or contemporaneous ones; a distinction which seems to have been overlooked in the case just noticed.

The only rational ground on which to justify the admission of evidence of a verbal agreement to control the contract implied by law in a blank indorsement, is that laid down by Mr. Justice WASHINGTON in *Susquehanna Bridge Co.* v. *Evans*, 4 Wash. C. C. 480, (U. S. D. p. 396, § 2132,) namely, " The reasons which forbid the admission of parol evidence, to alter or explain written agreements and other instruments, do not apply to those contracts implied by operation of law, such as that which the law implies in respect to the indorser of a note of hand." " The evidence is offered in conformity with the familiar rule, that the law does not imply a contract where an express one has been made. *Expressum facit, cessare tacitum.*" *Perkins* v. *Catlin*, 11 Conn., on page, 226, a case in which this question is very fully and ably discussed, and the conclusion reached that a blank indorsement is not a contract in writing : that the law implies a contract, as in a great variety of other cases, simply because the parties have failed to make an express one, and because otherwise the indorsement would be meaningless; that a blank indorsement is only *prima facie* evidence of the contract implied by law; and that it is competent, as between the parties to the indorsement, to prove, by parol evidence, the agreement which was in fact made, at the time of the indorsement.

This is certainly a much more rational and satisfactory

Smith *v.* Morrill.

view of the law than that which concedes that a blank indorsement creates a written contract, embracing in its terms just what the law implies, and then denying that the verbal agreement made at the time of the indorsement varies it. Arguing that that which converts a conditional promise into an absolute one, does not vary it!

The doctrine of equitable estoppel prevents such express verbal agreements from operating injuriously upon the interests of *bona fide* holders having no notice of them. It is only as between the parties to them that verbal agreements can be set up to vary those implied by law. As between the parties, the instrument itself is *prima facie* evidence of the contract implied by law; as regards third persons having no notice of any other, it is *conclusive.* By permitting their paper to go into circulation, with no evidence upon it of any other contract than that implied by law, parties in effect represent to *bona fide* holders, and as against them will be estopped to deny that the implied contract is the true one. This is upon the familiar principle that if one party induces another to act upon the supposition that a certain state of facts exists, he shall not afterwards be permitted to deny the existence of those facts, to the injury of the other; and not upon the principle that contracts implied by law are to be regarded as written contracts, not to be varied by parol. It is the rule of law applicable to estoppels, and not to written contracts, that protects the parties in such cases.

Thus, in *Williams* v. *Smith*, 48 Maine, 138, when the defendant offered to show that the several persons, whose names were upon the back of the note as *successive* indorsers, were, by virtue of a verbal agreement between themselves, to be regarded as *joint* indorsers, the Court would not permit him to do it; because Williams was not a party to the agreement, and it did not appear that he had any notice of its existence, and he had taken the note upon the implied representation of the defendant and the other indorsers, that they were holden *successively* and not *jointly.*

But, in this case, the plaintiff offers " to prove that it was understood and agreed verbally by and between all the indorsers upon said notes (*including himself and the defendant*,) previous to indorsing, that their indorsements should be *joint* and not *several*, and that in the event of liability thereon, and the payment thereof by either, of the whole amount of said notes, each should pay to the one thus paying, his equal proportion of the amount thus paid, as joint indorsers and not as several."

This is a suit against the defendant for contribution, *founded on this alleged agreement*. If such an agreement was actually made, it ought in justice to be enforced; and it would be a harsh rule of law that would prevent it. Upon the authority of *Weston* v. *Chamberlain*, 7 Cush., 404, *Clap* v. *Rice*, 13 Gray, 403, *Phillips* v. *Preston*, 5 Howard, 278, (16 Curtis, 396,) which are directly in point, and many other decisions not distinguishable in principle, we think the proof offered was admissible.

We have not overlooked the point taken in defence, that the proof offered would not support the declaration, " because there is no count in the writ setting out any such collateral contract." The special counts in the declaration do not appear to be founded on the collateral agreement, but on an alleged joint indorsement in fact. But there is also a count for *money paid*, and " where a debt has been paid by one of several debtors, or by one of several sureties, the payment is sufficient evidence in support of this count against the others for contribution." 2 Greenl., on Ev., § 114. Proof of the alleged agreement in this case would make the indorsers, as between themselves, co-sureties; and payment of the whole debt by one would authorize the maintenance of suits by the one so paying, against each of the others for their proportional parts, *upon counts for money paid*, for their use.          *Case to stand for trial.*

APPLETON, C. J.; KENT, DAVIS and DICKERSON, JJ., concurred.