LESTER M. BRAGDON, TRUSTEE
UNDER INDENTURE OF TRUST OF
AMELIA SHAPLEIGH, ET AL.
*vs.*
MARY G. WORTHLEY, ET AL.

York.    Opinion, July 15, 1959.

*Waterhouse, Spencer & Carroll,*
*Hutchinson, Pierce, Atwood & Allen,* for plaintiffs.

*Edward S. Titcomb,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. SIDDALL, J., did not sit.

DUBORD, J. This case comes to us on report. On May 22, 1950, Amelia Shapleigh, by means of an *inter vivos* indenture of trust, conveyed to Lester M. Bragdon and herself certain assets for the ultimate benefit of a number of persons named therein. She also executed her last will and testament under date of January 8, 1951. She died with this will still in force on March 17, 1952. Under the provisions of the will she bequeathed and devised the residue of her estate to the co-trustee or successor trustee or trustees, under the indenture of trust dated May 22, 1950.

Between May 22, 1950 and the date of her death, she made various other *inter vivos* gifts to some of the beneficiaries of the original trust agreement. These *inter vivos* gifts, not included in the original indenture, amounted to $112,710.33.

After the payment of her debts, funeral charges and expenses of administration properly chargeable against her testamentary estate, there was left only the amount of $578.16. Manifestly, this amount was not large enough to permit the executor to pay the inheritance and estate taxes. Pursuant to the provisions of the will, this balance passed to the plaintiff, Lester M. Bragdon, in his capacity as surviving trustee under the original trust indenture.

Because of the fact that Amelia Shapleigh had retained a life estate in the property conveyed in trust, as well as power of revocation, and for other reasons based upon the Internal Revenue Code, all of the assets formerly owned by Amelia Shapleigh which passed to the parties to the litigation (not including Lester M. Bragdon) were deemed includible in her estate for purposes of the assessment of the Federal Estate Tax. This tax amounted to $78,329.25.

Under the provisions of Section 2002 of the Internal Revenue Code, it is provided that the Federal Estate Tax shall be paid by the executor. However, another section of the

Internal Revenue Code imposes a lien for the entire tax upon any part of the property transferred to *inter vivos* trustees and makes any transferee of trust property personally liable for such tax to the extent of the value of the property received by such transferee. Moreover, while a duty is imposed by federal law on the executor, in the first instance, to make and file the estate tax return, a similar duty is placed upon the recipient of any portion of the taxable estate if the executor is unable to make a complete return. As a result of the situation which developed, not only was the surviving trustee the only person in a financial position to pay this tax, but he was also liable under the law to make such payment.

. During her lifetime, Amelia Shapleigh had adopted a son, named John B. Shapleigh. This adopted son filed an appeal to the Supreme Court of Probate within and for the County of York from the allowance of his adoptive mother's will, and he also instituted proceedings in equity seeking to set aside the trust indenture of May 22, 1950, as well as other *inter vivos* gifts, transfers and property dispositions made by Amelia Shapleigh to the trust beneficiaries who are involved in the instant proceedings. This litigation was compromised and the various beneficiaries under the trust contributed certain sums towards an amount paid to the adopted son. The agreement of settlement has no bearing upon the issue before us but there is a pertinent paragraph therein which authorizes the surviving trustee to pay all taxes assessed against the assets of Amelia Shapleigh subject, however, to the right of any transferee to oppose any claim for contribution.

Pursuant to the liability imposed upon him by law and authority given in the foregoing agreement of compromise with the adopted son, the surviving trustee paid, from the assets of the original trust, the entire amount of the Federal Estate Tax, *viz.*, $78,329.25.

He then brought a bill in equity seeking contribution from the *inter vivos* transferees for their proportionate part of the Federal Estate Tax brought about by reason of the receipt by them of assets which were not a part of the original trust *corpus* created by the indenture of May 22, 1950.

It is this matter which is before us on report.

It is the contention of the trustee that liability for equitable contribution exists both under the provisions of the trust as well as under principles of equity and good conscience. He admits liability for taxes insofar as assets in his trust are concerned.

He seeks to recover money judgments from the following persons in the amount set opposite each name.

| | |
|---|---|
| Sylvea Bull Smith | $ 2,349.41 |
| Alice M. Bartlett | 1,230.62 |
| Patricia Smith Langdon | 1,230.62 |
| Olea C. Smith | 1,230.63 |
| Stephen B. Smith | 1,230.63 |
| Shapleigh Smith | 1,230.63 |
| James F. Meader | 1,230.63 |
| Sarah Meader | 1,230.63 |
| Mary G. Worthley | 12,732.22 |

The correctness of the foregoing figures is not questioned by the defendants.

The trustee also prays, that in the event the *inter vivos* transferees are found to be liable for contribution, he be authorized and empowered to satisfy any money judgments obtained to the extent of any funds in his hands, otherwise payable to any such transferee.

All but two of the beneficiaries have joined as parties plaintiff. This they did without waiving any of their rights and all the plaintiff beneficiaries seek a determination of the issue, which is whether or not the surviving trustee is

entitled to pro rata contributions towards the payment of the Federal Estate Tax, based upon the value of assets received by any of the transferees, which assets were includible in the taxable estate of Amelia Shapleigh, but which did not pass by virtue of the original trust indenture.

The two defendants deny liability. It is their contention that the surviving trustee is directed by the provisions of the indenture of trust to pay the taxes for which contribution is sought. Subsequent consideration will be given to the pertinent provisions of the indenture.

We give consideration first to the general principles applicable to the doctrine of equitable contribution.

In Lawrence on Equity Jurisprudence, Volume 2, Section 742, it is stated:

> "Where two or more voluntarily assume a common burden, under such circumstances that they ought to bear it in equal proportions, or in some other definite proportions, between themselves, any one or more who, not being a volunteer under principles already considered, is required to pay more than his or their fair share of the common obligation, is to that extent relieving any other co-obligor who by reason of the payment bears less than his fair share, and in the absence of circumstances creating a counter-equity those so relieved may be subject to the equitable remedy of contribution."

In Whitehouse (single volume) Equity Jurisdiction, Pleading and Practice in Maine, in Section 137, we find:

> "The equity for contribution arises wherever one of several parties who are liable to a common debt or obligation discharges the same for the benefit of all. It is not founded on a contract but on the general principle of justice and its application is most frequently seen in the case of sureties."

Pomeroy on Equity Jurisprudence (5th Ed.) in Volume 2, Section 411, has this to say:

"Finally, the most important doctrine, perhaps, which results from the principle, Equality is equity, is that of contribution among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere legal liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share. No more just doctrine is found in the entire range of equity; and although it is now a familiar rule of the law, it should not be forgotten that its conception and origin are wholly due to the creative functions of the chancellor."

In Volume 2 of Pomeroy's Treatise on Equitable Remedies in Section 915, we find the following:

"When there are two or more parties bound in the same degree by a common burden, equity demands, as between themselves, that each shall discharge a proportionate share, and when one of such parties has actually paid or satisfied more than his fair share of the burden, he is entitled to a contribution from each and all of the others similarly bound, in order to reimburse him for the excess paid over his share, and thus to equalize their common burden."

"The principle of contribution is equality in bearing a common burden. The general rule is that one who is compelled to pay or satisfy the whole or to bear more than his just share of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their re-

spective shares." 13 Am. Jur., Contribution, § 3, Page 6.

While this case, in which the trustee is seeking equitable contribution from *inter vivos* transferees for a pro rata part of the full Federal estate tax is one of novel impression in this State, the doctrine of equitable contribution has been frequently applied by this court.

In *Williams* v. *Coombs,* 88 Me. 183, 186, contribution was granted to one tenant in common for necessary repairs upon the common property for which repairs he had paid. In *Kimball* v. *Tate,* 75 Me. 39, real estate owned by a decedent had been partitioned among the decedent's heirs by commissioners on the assumption that the decedent was upon his death the owner of one particular parcel of property. Subsequent to the partition a stranger to the decedent ejected the particular heir to whom that particular parcel of real estate had been partitioned. The ejected heir then successfully maintained a bill in equity against his fellow heirs for contribution to make up his loss.

In *Maine Trust & Banking Co.* v. *Southern Loan and Trust Company,* 92 Me. 444, a creditor of the defendant corporation maintained a creditor's bill to force contribution by stockholders of the insolvent defendant corporation toward the payment of its debts and such contribution was imposed ratably upon the stockholders.

Actions at law also have frequently been maintained successfully in Maine to enforce the same right of contribution. Such actions at law have been brought in assumpsit and have involved situations of joint contractors or joint makers of a note. See *Rollins* v. *Taber,* 25 Me. 144, 151, *Powers* v. *Gowen,* 32 Me. 381; *Paradis, Appellant,* 134 Me. 333, 337, 339; 186 A. 672. This court in such actions at law has also applied the doctrine of contribution between joint judgment

debtors in contract where one has paid the entire judgment. See *Stevens* v. *Record,* 56 Me. 488, 489, where it was said:

> "When one of several judgment [debtors] *ex contractu* pays the whole amount, he may recover contribution of the others . . . The suit is the ordinary one for contribution where one has paid under legal compulsion, for another, what was the duty of the latter to pay."

The principle of contribution has frequently been applied in the situation of co-sureties. For such suits for contribution brought by one co-surety against one or more other co-sureties, see *Howe* v. *Ward,* 4 Me. 195, 200; (1st Ed.) *Davis* v. *Emerson,* 17 Me. 64 (in which case the plaintiff, who had paid an execution on a note for both the debt and court costs, recovered a pro rata part of both from his co-surety) ; *Smith* v. *Morrill,* 54 Me. 48, 54; *Godfrey* v. *Rice,* 59 Me. 308, 312; and *Danforth* v. *Robinson,* 80 Me. 466.

It is clear that the doctrine of equitable contribution has long been recognized in this State. Now what of its applicability in respect to the Federal Estate Tax?

The Internal Revenue Code makes no specific provision for apportionment of Federal Estate Tax, except in relation to two particular kinds of property to the extent included in the taxable estate, namely, insurance proceeds and property subject to a power of appointment. In the instant case we are not concerned with these two exceptions.

In *Riggs* v. *Del Drago,* 317 U. S. 95, 63 S. Ct. 109 (1942), the United States Supreme Court said:

> "We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the *applicable state law* as to the devolution of property at death *should govern* the distribution of the remainder and *the ultimate impact of the federal tax . . .*" (Emphasis supplied.)

The *Riggs Case* involved the validity of a New York State apportionment statute in face of an argument that it was repugnant to the Federal Estate Tax law and therefore unconstitutional under the Supremacy Clause. This contention was specifically rejected with the holding quoted above that "the applicable *state* law" should govern "the ultimate impact of the federal tax." As the Indiana Court said in *Pearcy* v. *Citizens' Bank & Trust Co. of Bloomington,* 121 Ind. App. 136; 96 N. E. (2nd) 918, at 923 (1951) :

> ". . . the net effect of *Riggs v. Del Drago, supra,* is that the states may legislate on the subject of apportionment of estate tax only because Congress has not done so in the Federal Estate Tax Act. *By the same token, there is nothing in the Act of Congress to hamper the state courts, in the exercise of their jurisdiction over the administration and settlement of estates, from applying equitable rules whereby, as the result of case law, equitable apportionment of this tax is accomplished in each estate."* (Emphasis supplied.)

See also Annotation in 16 A. L. R. (2nd) 1282:

> "The Federal estate tax, as its name indicates, a tax upon the estate as a whole and is payable by the executor or administrator, but how its burden is to be apportioned as among the beneficiaries of and persons interested in the taxed estate is a question to be determined by the law of the jurisdiction in which the estate is being administered. In other words, the ultimate impact of the Federal estate tax is governed by the applicable state law."

See the long list of cases supporting the same principle in 37 A. L. R. (2nd) 170, 171.

See also *In re Gallagher's Will,* 57 N. M. 112, 255 P. (2nd) 317, 320; 37 A. L. R. (2nd) 149, 156:

> "The Supreme Court of the United States has declared in Riggs v. Del Drago, 1942, 317 U.S. 95, 63 S. Ct. 109, 87 L. Ed. 106, 142 A.L.R. 1131, that the

federal estate tax provisions do not describe who shall ultimately bear the brunt of the payment of the tax, but the matter is one for local control. The opinion in Hooker v. Drayton, 1943, 69 R.I. 290, 33 A. (2nd) 206, 209; 150 A.L.R. 723, gives a concise resumé of the matter prior to and under the Del Drago case:

" 'The fact that the statute provides that the tax is to be paid by the executor before distribution of the estate has led to some confusion in that certain state courts have construed it as a mandate of Congress charging the tax upon the decedent's residuary estate. (Citing cases.) But at least since 1922 the interpretation of the Treasury has been that it was not interested in the incidence of the burden of the estate tax. See Art. 85, Regulation 63, and subsequent regulations. And it was held by the Federal Circuit Court of Appeals of the 2d Circuit in 1923 that 'so far as the words of this statute are concerned, the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden bearing, the state courts can settle the matter.' Edwards v. Slocum, 287 F. 651, 653, affirmed 264 U.S. 61, 44 S. Ct. 293, 68 L. Ed. 564.' "

There seems to be a conflict of opinion as to whether the law of decedent's domicil is or is not controlling upon the issue of apportionment of estate taxes. See 16 A. L. R. (2nd) 1282. However, this issue is not presented in this case. Since Amelia Shapleigh, the decedent on account of whose death the Federal Estate Tax arose, was a Maine resident and all the *inter vivos* transferees are Maine residents or have submitted themselves to the jurisdiction of this court, it is the law of this state which is controlling here.

As was pointed out in the case of *In re Gallagher's Will, supra,* confusion arose in the development of applicable law

because of a misconception that Federal law required that the Federal Estate Tax should be borne by the probate residue. Such misconception was specifically repudiated in 1942, by the decision in *Riggs* v. *Del Drago, supra,* and since then, it has been held in most jurisdictions that the burden of estate taxes must ultimately be borne by every part of the taxable estate and that every beneficiary must pay a pro rata share of the tax. 37 A. L. R. (2nd) 169, 171.

See this Annotation for cases cited from Delaware, Florida, Georgia, Indiana, Kentucky, Louisiana, New Mexico and Pennsylvania. See also, *McDougall* v. *Central National Bank of Cleveland,* 157 Ohio St. 45, 104 N. E. (2nd) 441; *Carpenter* v. *Carpenter,* 364 Mo. 782; 267 S. W. (2nd) 632; *Traders National Bank of Kansas City* v. *U. S.,* 148 F. Supp. 278, affirmed 248 F. (2nd) 667.

In *Trimble* v. *Hacher's Ex'rs,* 295 Ky. 178; 173 S. W. (2nd) 985, 989, the court said:

"There may arise many cases, as seems to be the case here, where the personal representative is without funds to pay the heavy estate taxes upon the estate created by the revenue law. The inclusion in such gross tax estate of the value of property passing under power of appointment, or gifts in contemplation of death, would frequently create that situation. The personal representative who has paid, or is to pay the tax out of the true estate, should have the right of subrogation to the position of the sovereign which has received its tax, and to collect from those against whom the tax might have been, under certain circumstances, enforced under the provisions of the federal law had not the tax been promptly paid, or later paid as a debt against the residue."

In 37 A. L. R. (2nd) 172, we find the following statement:

"The reason why the foregoing doctrine of contribution is applicable with respect to the federal

estate tax is that the tax is imposed upon the estate as a whole, the lien of the tax extends to every asset of the taxable estate, and the government may seize any part of the taxable estate or enforce payment against any part of the estate. The tax is thus a common burden and is no more the obligation of one than of the other obligors. If, therefore, one of the obligors pays all or more than his share of the common obligation, he should be permitted to have contribution from the others."

The principle of equitable contribution in respect to Federal Estate Taxes has been applied in many cases. See *In re Mellon's Estate*, 347 Pa. 520, 32 A. (2nd) 749; *Kapnek* v. *Kapnek*, 38 N. J. Super. 268; 118 A. (2nd) 701; *Carpenter* v. *Carpenter, supra.*

Bearing in mind that Section 6324 of the Internal Revenue Code makes any transferee who receives property included in the gross estate personally liable for the tax to the extent of the value of the property received, we are convinced that the Federal Estate Tax in the instant case was the joint and several obligation of all of the *inter vivos* transferees; and that each is liable to the plaintiff for his proportionate share of the tax unless exonerated by a different intent expressed by Amelia Shapleigh, either in her will or in the trust indenture.

It is undoubtedly the law that the testator or trustor may designate any portion of his estate from which the Federal Estate Tax should be paid.

"It is universally recognized the testator has the right by his direction to make the federal estate tax payable from any portion of his estate he may designate. In the annotation following the report of Riggs v. Del Drago, supra, at 142 A.L.R. 1135, it is stated, at p. 1140:

" 'That a testator has the right by testamentary provision to place the burden of estate taxes where

he wishes seems to be unquestioned. Indeed, the Federal estate tax statute makes provision for the exercise of such a prerogative. The problem of the courts is to ascertain the intent of the testator, and when this is done, to effectuate that intent through its decrees.' " *In re Gallagher's Will,* 255 P. (2nd) 317, 321.

An examination of the will of Amelia Shapleigh indicates that it contains no direction concerning taxes. We pass, therefore, to consideration of the trust agreement and the provisions contained therein relating to the payment of taxes.

We find these provisions as subparagraph (a) (b) and (c) of the Eighteenth paragraph of the indenture.

"(a)  The surviving Trustee or Trustees, or his or their successor or, successors, shall first cause all property of the trust estate to be inventoried and appraised as of the date of death of said Amelia Shapleigh.

"(b)  The surviving Trustee or Trustees, or his or their successor or successors, shall prepare and file, in due course, any and all estate tax and inheritance tax returns required to be made to the Federal and state authorities *with respect to the trust estate and any gifts made therefrom, and shall pay all Federal or State estate taxes which may be found due on account of the property in this present trust,* (emphasis supplied) whether the same shall be assessed directly upon the trust, or indirectly in any probate proceedings upon the estate of said AMELIA SHAPLEIGH, and shall further pay all State inheritance taxes upon the several individual gifts hereinafter made.

"(c)  The following gifts shall then be made from the property remaining in the trust after the payment of all necessary expenses and the ascertainment and payment of any and all taxes in any way due on account thereof or in any way connected therewith:" (Then follows a list of the beneficiaries to whom payments shall be made.)

The plaintiff contends that these paragraphs specifically and particularly prescribe that the trustee shall be liable to pay the taxes only on assets which passed by virtue of the trust indenture; and he argues further that by implication the trustee is directed not to pay taxes on other *inter vivos* gifts outside of the trust.

The defendants argue that circumstances surrounding Amelia Shapleigh and some of the beneficiaries, before and at the time of the execution of the will and of the trust indenture, show an intention on the part of Amelia Shapleigh that all taxes should be paid from the corpus of the trust.

The Supreme Court of the State of Washington has passed upon a similar issue in the case of *In re Heringer's Estate*, 38 Wash. (2nd) 399; 230 P. (2nd) 297. In that case the will involved provided that the executor should pay all costs and expenses incident to the probate of the estate, including federal estate and inheritance taxes payable with reference to any of the devises or bequests therein made. It was held that this latter provision "by inference, directs the executor not to pay such taxes out of the assets of the estate with reference to any property which does not pass by devise or bequest."

The foregoing case of *In re Heringer's Estate*, was cited and approved by the New Mexico Supreme Court in *In re Gallagher's Will, supra*.

See also the Rhode Island cases of *Hooker* v. *Drayton*, 69 R. I. 290, 33 A. (2nd) 206, and *Industrial Trust Co.* v. *Budlong*, 77 R. I. 428, 76 A. (2nd) 600, 604. In the last case, the court said at Page 604:

> "In our opinion an examination of the language used in that clause shows clearly that while he directed his executor to pay all taxes from his residuary estate such payment apparently was

only for the following express and limited purpose, namely, 'to the end and with the effect, as far as possible, that the bequests and devises, other than of the residue hereinafter in this will contained, as well as any sums payable under any insurance policy or policies to named beneficiaries, may be exonerated therefrom and be received by the several beneficiaries without deduction * * *.' The clause contains no reference to payment of any taxes which might be imposed by reason of the inter vivos trusts in question."

See also the New Jersey cases of *Vondermuhll* v. *Montclair Trust Co.,* 14 N. J. Super., 300, 81 A. (2nd) 822, and *Montclair Trust Co.* v. *Spadone,* 139 N. J. Eq. 7, 49 A. (2nd) 497, 498, in which latter case the court said:

"To ascertain the testator's intention with respect to taxes, as in other cases of testamentary interpretation, the whole will is studied and evidence is received of the situation existing at the time the will was made. In the present case, little that is helpful appears beyond this clause in the will: 'I direct * * * that all inheritance taxes be paid out of my residuary estate.' In giving effect to such clauses, the rule has been developed that testator's express direction to pay out of residue a certain tax or part of tax impliedly requires that a different tax or another part of the tax be not paid out of residue but be charged on the property in respect to which it is levied. * * * This rule has been applied where the executor was instructed to pay the state or federal tax, or both, that may be assessed against 'my estate' or 'the share herein given,' or 'gifts herein made,' or 'the bequests or beneficiaries in my will named'; and it has been held that such limited directions impliedly relieved the residuary estate of so much of the tax as was levied with respect to the title of testator's widow as tenant by the entirety or as surviving owner of a joint bank account; to property which was the subject of appointment under a power; to legacies given by codicil, or to inter vivos trusts."

We recognize that Amelia Shapleigh could by direction in the instruments which she executed change the application of the rule of equitable contribution. However, in order to do this, her intention would have to be clearly expressed. We are convinced from a careful examination of the language used in the trust indenture that she limited the payment of taxes by the trustee to assets which passed under the trust and to no other assets. Her language to that effect is clear and it seems to us can bear no other interpretation.

We are, therefore, of the opinion that the position of the plaintiff is well taken and that he is entitled to contribution from all the *inter vivos* transferees in accordance with the amount set forth in his bill. Money judgments in such amounts may be entered, however, without interest and without costs. The trustee is also authorized and empowered to satisfy any such money judgment or judgments to the extent of any funds in his hands payable to any such transferee. We also hold that the costs and expenses of each of the parties, including reasonable counsel fees, shall be fixed by the sitting justice after hearing and paid by the trustee.

> *Decree to be made by the sitting justice below in accordance with this opinion.*