MORRISTOWN TRUST COMPANY AND ARCHIBALD S. ALEXANDER, AS SUBSTITUTED ADMINISTRATORS WITH THE WILL ANNEXED OF HENRY WELSH ROGERS, DECEASED, AND SUBSTITUTED TRUSTEES UNDER HIS WILL, PLAINTIFFS-RESPONDENTS, v. JOSEPHINE CHESNEY McCANN, DEFENDANT-APPELLANT, AND VIRGIL CLINTON McCANN, THEIR UNBORN LAWFUL ISSUE, AND THE CHILD OR CHILDREN, IF ANY, WHO MAY BE ADOPTED BY THEM, THE TRUSTEES OF PRINCETON UNIVERSITY AND THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, DEFENDANTS-RESPONDENTS.

Argued October 24, 1955—Decided November 14, 1955.

Mr. *Israel B. Greene* argued the cause for the defendant-appellant Josephine Chesney McCann (*Messrs. Greene & Hellring,* attorneys).

Mr. *George S. Fischler* argued the cause for the plaintiffs-respondents.

*Mr. Emory C. Risley* argued the cause for the defendants-respondents, The Trustees of Columbia University in the City of New York and The Trustees of Princeton University (*Messrs. Stryker, Tams & Horner*, attorneys).

The opinion of the court was delivered by

BURLING, J.  Plaintiffs, as substituted administrators *c. t. a.* and substituted trustees under the will of Henry Welsh Rogers, sought reimbursement of a proportionate share of federal and state death duties on testator's taxable estate from the defendant-appellant, Josephine Chesney McCann (hereinafter referred to as Josephine McCann).  The latter had been the recipient of several *inter vivos* gifts which, upon the death of the donor, constituted a portion of his taxable estate.  Plaintiffs were successful in the trial court and Josephine McCann addressed an appeal to the Superior Court, Appellate Division.  We certified the cause prior to an appellate review below.

Henry Welsh Rogers, a resident of West Orange, New Jersey, died testate on January 22, 1951.  Under the terms of his will, dated July 18, 1950, and duly admitted to probate, the testator bequeathed to Josephine McCann all his personal property and real estate, excepting money or securities.  A proviso directed that if he conveyed the real estate to a corporation during his lifetime she was to have all the corporate stock.  The bulk of the estate was designed to fall within the operation of the residuary clause by which a trust was created to benefit Josephine McCann for life and thence to support certain scholarships to be established by Princeton University and Columbia University.

The value of the gross estate was approximately $1,300,000.  This figure includes the value of the following gifts which Henry Welsh Rogers made to Josephine McCann during the latter years of his life:

1. In September, 1943, a gift of $5,000 United States Savings Bonds, Series "G", registered in the name of "Henry Welsh Rogers p/o/d Josephine Chesney Sorensen" (defendant-appellant's former name).

2. On August 10, 1950, a gift of 7½ shares of H.W.R. Inc., stock, valued for death tax purposes at $36,248.45. (Rogers had organized this corporation and conveyed his real property to the entity. The gift represented one-half of the corporate stock outstanding.)

3. On December 27, 1950, a gift of $60,000 in cash.

Plaintiffs or their predecessors have paid federal estate and state transfer inheritance taxes upon these *inter vivos* gifts and by this action sought reimbursement from Josephine McCann. Their cause is supported by the trustees of the two universities having a remainder interest in the testamentary trust. Josephine McCann denied liability, contending that the testator intended all death duties to be paid from the residuary estate.

The fifteenth paragraph of the will of Henry Welsh Rogers contained the following direction:

"I direct that any and all inheritance, estate and transfer taxes that may be imposed upon my estate or any part thereof, or any estate or any interest herein given, by the State of New Jersey, or any other State, or by the United States, shall be paid out of the *corpus* or principal of my residuary estate; * * *"

The trial court considered it likely "that the will was executed with no thought of the possible taxes on the *inter vivos* transfers or gifts" and applied what was deemed to be an unyielding rule of construction to the phrase "upon my estate" which equates "estate" with property passing under the will. The "rule" has a further ramification to the effect that recipients of non-probate property are to bear the tax burden attributable to such transfers. The trial judge considered the rule "harsh" but considered his disposition governed by the cases of *Morristown Trust Co. v. Childs,* 128 *N. J. Eq.* 524 (*Ch.* 1940) and *Commercial Trust Co. of N. J. v. Thurber,* 136 *N. J. Eq.* 471 (*Ch.* 1945), affirmed 137 *N. J. Eq.* 457 (*E. & A.* 1946).

The questions involved present these two propositions:

1. Whether it is necessary to resort to rules of construction in the case *sub judice?*

2. Whether the rule of construction applied below represents the law of this state?

An approach to the problem must include brief consideration of the judicial process in the construction of testamentary instruments and the purpose and employment of rules of construction.

It has long been recognized that consideration is to be initially devoted to the language of the instrument itself taken in context with the surrounding facts and circumstances, thus endeavoring to ascertain the intent of the testator, *In re Fox' Estate*, 4 *N. J.* 587, 593 (1950); *Lawes v. Lynch*, 6 *N. J.* 1, 6 (1950); *In re Armour's Estate*, 11 *N. J.* 257, 271 (1953); 2 *Page on Wills* (3rd ed. 1941), *sec.* 920. Professor Simes would characterize this initial endeavor as ascertaining the most *probable* intent of the testator for it is impossible to determine with absolute certainty his actual subjective intent. 2 *Simes Law of Future Interests* (1936), *sec.* 307. This thought is reflected in the *Restatement of the Law of Property, sec.* 241 (1940) where the "judicially ascertained intent" is stated to be the product of construction.

It is only when the court is left in doubt by the terms of the will and the surrounding circumstances of the testator's most probable intent that resort is made to the numerous rules of construction. *Rosencrans v. Fry*, 12 *N. J.* 88, 97 (1953); *In re Fisler's Estate*, 133 *N. J. Eq.* 421, 423 (*E. & A.* 1943); 5 *Clapp on Wills and Administration* (*New Jersey Practice*), *sec.* 103, *p.* 235 (1950). This is precisely what the trial judge did in the case *sub judice*—being of the opinion that Henry Welsh Rogers gave no thought to the imposition of death duties upon the *inter vivos* transfers he applied a rule which finds its origin in *Gaede v. Carroll*, 114 *N. J. Eq.* 524 (*E. & A.* 1933), to reach a conclusion.

In *Gaede v. Carroll, supra,* the testator had made the following provision in his will:

" 'I direct that any and all inheritance taxes whatsoever, that may be levied or assessed against the share herein given by any of the provisions hereunder to my said wife, shall be paid out of my said estate, it being my intention and wish that the bequests or provisions herein made to her or for her benefit shall go to her free from any and all inheritance or other taxes.' " 114 *N. J. Eq.*, at *page* 532.

Testator's widow became the absolute owner of an estate by the entirety upon her husband's death and one of the questions there involved was her liability to reimburse the executor for federal estate taxes paid upon the property which passed to her, not under the will, but by virtue of her right of survivorship. The court noted *Bemis v. Converse*, 246 *Mass.* 131, 140 *N. E.* 686 (*Sup. Jud. Ct.* 1923), to the effect that "where no other provision is made, taxes must be paid out of the residue of the estate," and then concluded (*Gaede v. Carroll, supra,* 114 *N. J. Eq.,* at *pages* 533–534):

"However, in the instant case there is another provision, because the fair interpretation of the ninth clause of the will is that the residue is made liable for all taxes on provisions made for the wife by the will, and for nothing else in the way of taxes for her benefit * * * So that, without deciding what the result might be if there were no expression in the will, we conclude that the executor is entitled to reimbursement from the widow for the tax in question under the provision in the ninth clause of the will."

The question left unanswered was determined in *Turner v. Cole,* 118 *N. J. Eq.* 497 (*E. & A.* 1935), where it was held that in the absence of a statute or testamentary direction to the contrary, the federal estate tax was to be satisfied from the residue of the estate without reimbursement from the persons coming into ownership of the property. The rule of *Turner v. Cole, supra,* was followed in *Goldman v. Goldman,* 2 *N. J. Super.* 412 (*Ch. Div.* 1949), where the testatrix had made no provision in her will for the payment of taxes, and it was also determined that the executor was entitled to reimbursement for taxes imposed upon an *inter vivos* trust by virtue of the New Jersey Transfer Inheritance Tax. See *Fidelity Union Trust Co. v. Hall,* 125 *N. J. Eq.* 419, 430 (*Ch.* 1939), on the latter point. The effect of the *Turner* decision, *supra,* is to lay down a rule of construction which is utilized when a court, in construing a testamentary instrument, is left in doubt as to the subjective intent of the testator. The rule appears to be based upon the assumption that in the normal affairs of life one would have considered the tax consequence and by withholding any direction as to

the incidence of the death duties it may be reasonably presumed that the burden was intended to fall where the federal and state law place it. The emphasis of the construction process is thereby shifted from a subjective analysis to an objective standard. (*Cf. N. J. S.* 3*A*:25–30 *et seq.* which provides for apportionment of federal and New Jersey "estate" taxes in the "absence of directions to the contrary," *N. J. S.* 3*A*:25–33. The legislation is not applicable here because the instant will was executed prior to January 1, 1951. See *N. J. S.* 3*A*:25–38).

What effect did *Turner v. Cole, supra,* have upon the so-called rule of *Gaede v. Carroll, supra?* Plaintiffs contend there should be no confusion between this rule and the rule of *Turner v. Cole, supra.* It is said the *Gaede* rule is applicable "where the will does contain a provision dealing with the payment of death taxes which is the very situation expressly not covered by the *Turner* case." This is an oversimplification. If the result of the *Gaede* case, *supra,* is considered to be a rigid rule of construction applicable where the court is unable to gather the subjective intent of the testator from the words of the will and the surrounding circumstances then it is directly in conflict with *Turner v. Cole, supra.* This follows from the observation previously made that rules of construction are not invoked unless testator's intent is ambiguous and undefined. If such is the case it is impossible to apply one rule (*Gaede*) directing reimbursement and another rule (*Turner*) denying it. To avoid this conflict, *Gaede v. Carroll, supra,* must be limited to the facts of that case.

The mere fact that a testator directs all death duties levied against his estate to be paid out of his residuary estate will not itself operate to cast the federal tax burden upon recipients of property not passing under the will but included in the taxable estate. There must be some other manifestation of intent to reach this result. Several of the cases which followed *Gaede v. Carroll, supra,* demonstrate this proposition. Thus, in *Morristown Trust Co. v. Childs,* 128 *N. J. Eq.* 524 (*Ch.* 1940) the testator had directed his executor "to pay

out of my residuary estate every federal or state * * * tax there may be imposed against my estate or against any gift * * * herein provided." Testator had executed two *inter vivos* trusts in his lifetime and the question of contribution arose. Vice-Chancellor Buchanan relied upon *Gaede v. Carroll, supra,* but also pointed out that if the estate were to sustain the entire burden it would be exhausted. "It would * * * be absurd to ascribe to the testator an intent that there should be paid from his testamentary estate of $230,000, gifts and taxes aggregating $312,000, or nearly $84,000 more than there was in the estate," *Morristown Trust Co. v. Childs, supra,* 128 *N. J. Eq.,* at *page* 532. See also *Commercial Trust Co. v. Millard,* 122 *N. J. Eq.* 290 (*Ch.* 1937) ; *Fidelity Union Trust Co. v. Suydam,* 125 *N. J. Eq.* 458 (*Ch.* 1939). *Cf. Fidelity Union Trust Co. v. Hall,* 125 *N. J. Eq.* 419, 430 (*Ch.* 1939), as an example of the conflict between the so-called *Gaede* rule and *Turner v. Cole, supra, re*: federal estate tax.

Numerous other citations might be expressed where *Gaede v. Carroll, supra,* was employed in varying precedential degrees. In *Commercial Trust Co. v. Kohl,* 131 *N. J. Eq.* 233 (*Ch.* 1942) ; *Palmer v. Palmer,* 135 *N. J. Eq.* 516 (*Ch.* 1944), and *The Hackensack Trust Co. v. Ackerman,* 138 *N. J. Eq.* 244 (*Ch.* 1946), there was presented essentially the same question as the case *sub judice,* and therein Vice-Chancellor Egan refused to apply the result in *Gaede v. Carroll* as an arbitrary rule of construction of significant precedential value. Indeed, it may be argued that there should not be ascribed to the court in *Gaede v. Carroll* the intent to announce a general rule of construction. The opinion creates no impression that the court's attention was directed other than to the language of the will and the evidence of surrounding circumstances.

It cannot be denied that several later cases have indicated otherwise, *e. g.,* see *Commercial Trust Co. v. Thurber,* 136 *N. J. Eq.* 471, 475 (*Ch.* 1945), affirmed 137 *N. J. Eq.* 457 (*E. & A.* 1946) ; *cf. Montclair Trust Co. v. Spadone,* 139 *N. J. Eq.* 7 (*Ch.* 1946), but we agree with counsel for

Josephine McCann that the *Gaede* case, *supra*, does not control the coverage of tax clauses generally.

It is also well to remember that the trend in this field of law is to be bound lightly by precedents, *In re Bumstead's Estate*, 1 *N. J.* 386, 393 (1949). Rules of construction are not to thwart the testator's intention by a rigidity adverse to their utility.

"The modern tendency in the construction of wills is to be bound lightly by precedents; the court is concerned less with stabilizing the significance of the language of the law than with effectuating the testator's intentions. However, one man does not use words in a way widely different from that of his fellows. It is consequently always important to examine the interpretation which the court has put upon other wills, bearing in mind that rules of construction derived from other cases are pliable, yielding to the instant testator's manifested intention and serving but to assist in ascertaining his intention." 5 *Clapp on Wills and Administration, supra*, sec. 103.

With these principles in mind we proceed to investigate the testamentary design of Henry Welsh Rogers. If, from a consideration of his will and the factual setting lending color to the terms thereof, the design of the testator as to allocation of death duties was ambiguous or uncertain we would feel bound to apply the rule of *Turner v. Cole, supra*, and thereby direct the entire federal estate tax burden to the residuary estate, although recognizing a right of reimbursement in the plaintiffs for the state inheritance tax imposed upon the *inter vivos* transfers. *Goldman v. Goldman, supra*.

The terms of the will and the surrounding circumstances establish that the testator's most probable intent was to have his residuary estate bear the burden of the federal estate and state inheritance taxes imposed against his taxable estate. It is unnecessary in this case to resort to rules of construction where precedent may assert whatever sanctity it possesses in the law of wills.

Josephine McCann was the object of testator's affection and bounty. By paragraphs fourth and fifth of the will she is the devisee of two residential properties owned by Rogers and all his tangible personal property except money or secur-

ities. If the realty should be subsequently conveyed to a corporation, paragraph tenth directs the executors to transfer all testator's stock therein to Josephine McCann. She is the life beneficiary of the trust whose principal comprises the bulk of the estate, and the *corpus* may be used to supply monies for her medical purposes if necessary. She is to receive income payments every four months and the trustee is to render informal accounts which "shall cover both principal and income" and the trustee "shall explain (the) reasons for the sale or purchase of securities." By codicil the testator abundantly provided for the family of Josephine McCann if she should marry and predecease her husband. His gratitude to Josephine McCann (formerly Josephine Sorensen) is expressed in paragraph sixth:

"I desire, at this time, to express my sincere thanks and appreciation to my former ward, Josephine Chesney Sorensen, for her devoted care and attention to me and for making a home for me, especially since 1937, when I contracted arthritis, from which at present I am crippled in legs and arms."

The party litigants foresee the death taxes attributable to the *inter vivos* transfers to approximate $30,000 to $32,000. This would represent a cash outlay over one-third the value of the transfer made by Henry Welsh Rogers to Josephine McCann prior to his death, but it represents a relatively small percentage of the residuary estate which approximates $815,000 after taxes. A further point of observation is that the stock transfer and the gift of $60,000 occurred within a short period of time after the execution of the will and is indicative that Rogers considered this property as part of his estate, the tax burden whereof was to be borne by the residuary estate. *Cf. Montclair Trust Co. v. Spadone, supra.* The thought is bolstered by paragraph tenth of the will whereby Josephine McCann is to receive all the corporate stock owned by testator in the corporation to which the realty was later transferred, and recalling that one half of the outstanding stock was the subject of an *inter vivos* gift to her 22 days after the execution of the will. Although the same im-

pression cannot be gained from the gift in 1943 of government bonds valued at $5,000, we are of the opinion that having relieved a substantial burden of death duties from Josephine McCann it cannot reasonably be said that the tax incidence of the bonds are to be treated otherwise. 5 *Clapp on Wills and Administration, supra,* sec. 194.

The decision below is reversed and the cause remanded for entry of judgment in conformance with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice OLIPHANT—1.