OLD COLONY TRUST COMPANY
EXECUTOR AND TRUSTEE UNDER
THE WILL OF EDWIN W. MCGOWAN
*vs.*
IRMA G. MCGOWAN, ET AL.

Kennebec.  Opinion, June 1, 1960.

*Weeks, Hutchins & Frye,* for plaintiffs.

*Linnell, Perkins, Thompson, Hinckley & Thaxter,*
*Ralph G. Boyd and William D. Weeks,*
*Hutchinson, Pierce, Atwood & Allen,*
*Verrill, Dana, Walker, Philbrick & Whitehouse,*
*Sanford L. Fogg,*
*Arthur T. Schmidt,*
*Hirshberg, Pettingill & Strong,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WEBBER, J.   On report.   The will of Edwin W. Mc-Gowan, who died on May 12, 1955, was duly admitted to probate and thereafter the widow, Irma G. McGowan, seasonably filed her waiver and elected to claim her statutory interest.   The Old Colony Trust Company, having qualified as Executor and Trustee, seeks the aid of this court in settling the interests of the parties who share the estate and in fixing the proportions of state and federal taxes to be borne by the respective takers.

The will is a lengthy one and for the most part expresses the wishes of the testator and defines the powers and duties of his trustee in clear and unambiguous language.   There are certain important phrases, however, which create uncertainty, especially when read in the light of the widow's waiver—a contingency which the testator may well not have

contemplated. The testamentary pattern was to provide for (a) the payment of debts; (b) a specific legacy of $10,000 to one Dr. Hiden; and (c) creation of two trusts, the first of which will be referred to as the "Dartmouth Trust" and the second as the "Family Trust." In addition, there was life insurance in force, some payable to named beneficiaries and some to the testator's estate. There were also building and loan shares in the name of the testator which, like insurance proceeds, in the absence of appropriate testamentary disposition pass outside the will, but nevertheless play a part in settling the interests of the claimants. Real estate in Massachusetts passed to the widow as surviving joint tenant.

The parties in interest include the widow, the son, and the granddaughter of the testator, his nephews, the guardian *ad litem* of the infant parties and unborn children, and Dartmouth College.

The plaintiff first seeks instruction as to the composition of the widow's share. R. S., 1954, Chap. 170, Sec. 20, provides the applicable rule for descent of personal property which governs here since there was no real estate passing through the estate. The statute provides: "The personal estate of an intestate, except that portion assigned to his widow by law and by the judge of probate, shall be applied first to the payment of his debts, funeral charges and charges of settlement; and the residue shall be distributed" * * * (1/3 to the widow by reference to R. S., Chap. 170, Sec. 1, governing the descent of real estate). By force of R. S., Chap. 170, Sec. 14, the widow who has waived the provisions of a will in a case such as this takes a share composed as above set forth as though by intestacy.

In the instant case the widow applied for and was awarded $9,000 as her reasonable sustenance for a period of ninety days as provided by R. S., Chap. 156, Sec. 17. This sum will be first deducted before computing the widow's

share as expressly provided by the above quoted portion of R. S., Chap. 170, Sec. 20. The same statute directs the deduction of debts owed by the testator at his death and of his funeral expenses before computing the widow's fractional interest. The "charges of settlement," also to be first deducted, will include along with the usual costs of administration certain counsel fees and expenses attributable to this litigation as may later be determined. The widow suggests that some portion of this expense should be treated as pertaining only to trust matters and therefore not first deductible as a "charge of settlement," but in our view the matters pertaining to the composition of the trusts, the impact of taxes upon them, and related matters are so inseparably associated with other legal issues to be resolved that no such separation can fairly or properly be made. It will therefore be necessary to include all such allowable fees and expenses within the deductible category of "charges of settlement." It is well settled that the widow's statutory share takes precedence over any legacy and will be determined without regard to the specific legacy to Dr. Hiden. *Fogg, Appellant,* 105 Me. 480.

As already noted, there was in force insurance payable to the estate and certain building and loan shares in the testator's name. We find no language in the will which in our view purported or was intended by the testator to dispose of either the insurance proceeds or the shares. Accordingly, as provided by R. S., Chap. 170, Sec. 21, the insurance premiums paid within three years together with interest thereon form part of the estate of which the widow takes her fractional interest as a result of her waiver, but the balance of proceeds of insurance forms no part of the estate and by force of the insurance statute itself passes directly to the persons and in the proportions fixed by that statute. In short, the executor will disregard this excess of insurance proceeds in computing the widow's share of the estate. The

same treatment will be accorded the building and loan shares which pass by virtue of the provisions of R. S., Chap. 59, Sec. 177 (in effect at the date of death) and do not become part of the McGowan estate.

The executor will compute the widow's share without deduction for Maine inheritance taxes which are neither "debts" nor "charges of settlement" within the intendment of R. S., Chap. 170, Sec. 20. Having thus established her statutory interest, the executor will subsequently deduct and pay to the State of Maine the tax on the widow's "privilege of receiving property by * * * inheritance" before making distribution to her, all as required by R. S., Chap. 155, Sec. 14. See *MacDonald, Ex'r.* v. *Stubbs,* 142 Me. 235 at 240. The tax falls not upon the estate but upon the recipient, and the executor is in effect made a tax collector by the statute. Assuming for the moment the existence of a "tax clause" in the will, the widow who has waived the will neither claims nor receives any benefit therefrom. We will have occasion later to discuss the contention of the widow that she should have equitable relief from the burden of state inheritance tax because, as she argues, credit therefor is allowed in the computation of the federal estate tax. All parties agree that there is no practical likelihood of the assessment of a Maine "estate tax" but principles announced in this opinion would govern such an eventuality.

A much more difficult question is presented with reference to the status of the federal estate tax in the computation of the widow's share and the ultimate impact, if any, of that tax upon her interest. As already noted, the computation of the widow's interest depends upon the construction of R. S., Chap. 170, Secs. 1, 14 and 20 when read together as applicable to the situation which exists when the widow has renounced the will and only personal estate is involved. As we have seen, Sec. 20 provides that the widow's fractional share of the personal estate is subordinated to (a) that por-

tion which she receives otherwise by law or by order of the probate court; (b) the debts of the estate; (c) the funeral charges; and (d) the charges of settlement. We may disregard at once (a) and (c) in determining whether her interest is subordinated to the federal estate tax. We are satisfied also that such taxes are not included in the category of "debts." It has frequently been stated that taxes are not debts. The latter are obligations created by the decedent and founded upon contract express or implied. The former, however, are imposts levied to finance the lawful purposes of government and enforceable without the consent of the taxpayer. *Meriwether* v. *Garrett* (1880), 102 U. S. 472, 26 L. Ed. 197; *Hepburn* v. *Winthrop* (1936), 83 Fed. (2nd) 566; see *City of Augusta* v. *North,* 57 Me. 392; *Boston* v. *Turner* (1909), 201 Mass. 190, 87 N. E. 634. No different meaning was assigned to the word "debts" in Sec. 20.

The phrase "charges of settlement" has long been in the statute and has apparently never been construed. Obviously it embraces all of the ordinary costs and expenses of administration of the estate. We must now determine whether or not it includes more. The phrase does not stand alone but must be read in the light of the whole statute of which it forms a part. We note that after provision has been made for the categories described above as having priority, the statute contemplates that a "residue" is then available to be "distributed." In *Fogg, Appellant, supra,* a case dealing with a widow's election to renounce the will, the court lumped all the priority items together as "debts and expenses" and clearly recognized that the widow is taking a "distributive share" of a "residue" available for distribution as in cases of intestacy. This "residue" was referred to as a "net balance in the hands of the administrator" in *Smith, Appellant,* 107 Me. 247, and again in *Hussey* v. *Titcomb,* 127 Me. 423. We are satisfied that no such "net balance" can be computed until a deduction has first been made for the

federal estate tax. Moreover, by force of law the executor must discharge by payment the liability of the estate for the tax and there is certainly no "settlement" of the estate until he has done so.

In Wisconsin, a statute provided that a widow after waiver took a fraction of the "net personal estate." The court construed those words as meaning the estate which remained after the payment of all "charges" including the federal estate tax. *In re Uihlein's Will* (1953), 264 Wisc. 362, 59 N. W. (2nd) 641.

By its nature the federal estate tax is an excise tax on the transfer of the estate upon death, and the estate is regarded as being instantly depleted to the extent of the tax. It has been said that such taxes are death duties on the interest which ceased by reason of death. They are not taxes on succession or the receipt of benefit. *Moorman* v. *Moorman* (1954), 340 Mich. 636, 66 N. W. (2nd) 248; *Buffington* v. *Mason* (1951), 327 Mass. 195, 97 N. E. (2nd) 538. It seems certain that there can be no "residue" for "distribution" until after the depletion caused by the federal estate tax has occurred, and we are therefore constrained to construe the statutory phrase "charges of settlement" as broad enough to include the federal estate tax as one of those charges. Taft, J., dissenting in *Miller* v. *Hammond* (1952), 156 Ohio St. 475, 104 N. E. (2nd) 9, applied the same reasoning and concluded that the portion of the estate required for federal estate tax is never available to be "distributed," and a widow's statutory share of "distributable assets" can only be computed after deduction of the federal estate tax. We note with interest that the Taft theory later found support when the *Miller* case was subsequently overruled in *Campbell* v. *Lloyd* (1954), 162 Ohio St. 203, 122 N. E. (2nd) 695.

The widow vigorously contends that any result which compels her to bear any share of the burden of federal estate

tax is grossly inequitable since that portion of the estate which descends to her qualifies for marital deduction and adds nothing to the tax. This argument has frequently been advanced but has ultimately been rejected by most of those courts which have dealt with the problem. In this connection it is necessary to keep in mind the nature of the marital deduction. Sec. 2056(a) of the Internal Revenue Code, 26 USCA 2056(a), provides in part that in ascertaining the value of the taxable estate there is deducted from the gross estate "an amount equal to" the interest passing to the surviving spouse (as limited). The words used are words of measure, not of an *exemption* given to the surviving spouse, but of a *deduction* given to the estate. If we could translate the language of the section into terms of ownership we might say that the marital deduction must be thought of as belonging to the estate rather than to the surviving spouse. This concept seems to have guided the court in *YMCA* v. *Davis* (1924), 264 U. S. 47, 44 S. Ct. 291, a case in which the estate had the benefit of charitable deductions, but the charitable institutions which were residuary legatees were compelled to share the burden of the tax as thus reduced. The court pointed out that the charitable beneficiaries profited much by the charitable deductions but not to the extent of acquiring exemptions. The same underlying concept has relevance in the case of the surviving spouse and the marital deduction. See *Thompson* v. *Wiseman* (1956), 233 F. (2nd) 734.

Thus far Congress has not seen fit to allocate the burden of the federal estate tax, but has left it to "state law (to) determine the ultimate thrust of the tax." *Riggs* v. *Del Drago* (1942), 317 U. S. 95, 63 S. Ct. 109. The testator is free to allocate the burden by the provisions of the will, but such provisions do not aid a widow who elects to renounce the will and who cannot thereafter claim its benefits. The door is always open to states to enact apportionment stat-

utes and many have done so. Maine, however, has no such statute. As a matter of judicial policy we do not recognize such a compelling equity in the widow arising from the marital deduction as would lead us to a different construction of the statute which defines her interest.

In one or two instances courts, without the aid of apportionment statutes, have held that what they deem to be the underlying purpose of the marital deduction compels the exoneration of the widow from the federal estate tax. This was the basis of the opinion in *Lincoln Bank & Trust Co.* v. *Huber* (1951), 240 S. W. (2nd) (Ky.) 89, 91, which stated that the "apparent purpose behind the enactment of the (marital deduction) was to equalize the estate tax in noncommunity property states, with that of community property states, and to prepare the way for elimination from the tax burden (of) all those whose legacies or allotments do not create or add to the tax." This theory, although appealing, becomes somewhat less persuasive if we but recall that the tax is upon the *whole estate* and if we further bear in mind that Congress did not provide for this equality with community property states but only made it possible for any state to achieve that equality if it was so minded. It is interesting to note in passing that some states have enacted statutory apportionment but without providing exoneration for the surviving spouse who renounces the will. *Weinberg* v. *Safe Deposit & Trust Co.* (1951), 198 Md. 539, 85 A. (2nd) 50. We recognize that the theory of the Lincoln case prevailed also in *Pitts* v. *Hamrick* (1955), 228 F (2nd) 486, and in *In re Peters Will* (1949), 88 N. Y. S. (2nd) 142.

It is urged that in our recent opinion in *Bragdon, Trustee* v. *Worthley et al.*, 155 Me. 284, we recognized a rule of equitable apportionment and contribution broad enough in scope to exonerate this widow from federal estate tax burden. It is true that Bragdon recognizes that equitable principles require contribution under certain circumstances.

The nature of the federal estate tax and the nature of the marital deduction do not seem to us to raise such a compelling equitable right in the surviving spouse as to require her exemption from the tax as a matter of judicial policy. We think that whether or not a surviving spouse who elects to renounce a will should be wholly or partly relieved of the burden of federal estate tax is a matter of public policy which should be left to legislative determination. *Wachovia Bank & Trust Co.* v. *Green* (1953), 236 N. C. 654, 73 S. E. (2nd) 879; *In Re Uihlein's Will, supra; Weinberg* v. *Safe Deposit & Trust Co., supra.* We therefore conclude that in the instant case the federal estate tax must first be deducted as one of the charges of settlement before computation of the widow's fractional share. In so saying, however, we exclude those amounts which under Sec. 2206 of the Code, in the absence of a "tax clause" would have been recoverable from beneficiaries of insurance (other than the widow). Just as the widow cannot claim the benefit of testamentary provisions after her waiver, neither can she be penalized by the effect of any clauses in the will. Applying principles of equitable contribution, later to be touched upon, and again to prevent penalizing the widow because of any "tax clause," a like exclusion must be made as to the federal estate tax attributable to other non-testamentary items passing to persons other than the widow.

We may now revert briefly to the argument of the widow that she should have equitable relief from Maine inheritance taxes to the extent that credit is given for them in computation of federal estate tax. This contention is predicated on the assumption that the widow is first relieved for reasons of equity from any burden of the federal tax. Since the decision on this point is adverse to the widow's position, she cannot be afforded relief from the impact of Maine inheritance tax.

As already noted, the widow will receive certain proceeds of insurance and building and loan shares which pass as

non-testamentary assets. As to the insurance the obligation of the widow as to any contribution to federal estate tax is fully governed by the provisions of Sec. 2206 of the Code. Insofar as the insurance payable to the surviving spouse qualifies for marital deduction, no contribution attributable thereto shall be exacted by the executor. Sec. 2206 does not, however, relate to other non-testamentary items such as building and loan shares, and here state law governs the duty as to contribution by the widow to the payment of federal estate tax. In *Bragdon, Trustee* v. *Worthley et al.,* 155 Me. 284 at 294, we cited with approval a number of cases which have been decided since 1942 and which have held that in the absence of a controlling testamentary provision, non-testamentary items must share the burden of federal estate tax in the proportion which they bear to the testamentary estate. We are satisfied that unless this be the rule, great hardship may result in many cases. The testator can always provide otherwise when he so desires. We think the principles of equitable contribution, even without the aid of an apportionment statute, require that we hold in the instant case that the widow must contribute her proportion of the federal estate tax attributable to the building and loan shares which pass to her. Obviously, she will be entitled to credit for this contribution in the computation of her statutory share of the estate. Earlier in this opinion we applied the same principle in the case of beneficiaries other than the widow to prevent any adverse effect upon her by any "tax clause."

As to the beneficiaries other than the widow, they are entitled to the benefit of any "tax clause" contained in the will In the fifth clause thereof which disposes of the residue of the estate by dividing it into two trusts, the testator used the following language: "The Edwin W. McGowan, Jr. Trust Fund ("Dartmouth Trust," so-called) shall consist of a fund equal to such a sum as is one-third of my total estate

after the payment of *all* bills, expenses of administration *and estate taxes (but not federal taxes);* and the McGowan Family Trust Fund shall consist of the balance remaining, *reduced by federal taxes."* (Emphasis ours.) All the parties agree that the italicized word "estate," when viewed in context, was intended by the testator to describe "state" as opposed to "federal" taxes. The language, viewed as a "tax clause," is at best inartistic but nevertheless we are satisfied that it sufficiently discloses the testator's intention to have all taxes, both "state" and "federal," *without limitation,* paid out of the residue of his estate. The widow, as noted, loses the benefit of this clause by her waiver, but all other beneficiaries, whether of testamentary or non-testamentary items, are fully exonerated thereby from the burden of all such taxes.

We turn now to the composition of the two trust funds as to which the parties hold divergent views. By the fifth clause, upon a condition now fulfilled, the testator gave:

> " * * * all the rest, residue and remainder of my properties, real, personal or mixed, wherever situate and however found, * * * to (the named trustee), IN TRUST, however, to be divided into two funds, to be determined and known as the EDWIN W. McGOWAN, JR. TRUST FUND and the McGOWAN FAMILY TRUST FUND. The (first trust) shall consist of a fund equal to such a sum as is one-third of my total estate after the payment of all bills, expenses of administration and estate taxes (but not federal taxes) ; and the (second trust) shall consist of the balance remaining, reduced by federal taxes."

Because of the ambiguity of the language employed, Dartmouth can and does make a strong argument that the words "total estate" refer to the "probate estate." The practical result of this interpretation would be to cast the entire burden of the widow's withdrawal of her statutory interest upon the "family trust." If we add to this burden the addi-

tional obligation of the "family trust" to absorb the federal estate tax, the "family trust" would be vastly depleted and in all probability inadequate to carry out fully all of what the testator seems to have intended to be the purposes of the trust. The words "total estate" are by no means words of art and have no exact or precise meaning. They might under appropriate conditions mean, for example, the "total taxable estate," or again and as contended by Dartmouth the "total probate estate," or yet again and as here contended by the "family" the "total residuary estate." As always in such cases as this we are not greatly aided by authority but must seek the intention of the testator in his use of these words by examination of the entire will.

At the moment when the words were used, the testator was addressing his mind to the disposition of his residuary estate. He had introduced the subject by employing a familiar language pattern commonly used to describe such an estate. He was placing the entire residue in trust in the hands of a single trustee "to be divided into two funds." The testator's own language in our view tends to refute the argument advanced by Dartmouth that he was in reality using a formula device to create a general legacy with priority status for Dartmouth and that the true residue was created by the phrase, "the balance remaining, reduced by federal taxes," which was to constitute the "family" trust fund. There are other "straws in the wind" which suggest the testator's intended testamentary pattern. By the sixth clause of the will he provided that in event he should not be survived by either wife, son, granddaughter or other issue of the son, the "Dartmouth trust" and the "family trust" were each to have one-half of the residuary estate. The importance of this clause lies in the fact that the beneficiaries of the "family trust" under these conditions would have been nephews. Under the fifth clause, however, the widow, son and granddaughter were all primary bene-

ficiaries of the "family trust" with important although limited rights as to both income and invasion of corpus. We cannot conceive that the testator ever intended that Dartmouth should fare proportionately better in competition with members of his immediate family than it would in competition with nephews. There is ample indication in the will that his wife and those closest to him by blood by no means occupied an inferior status as objects of his concern and intended bounty.

If on the other hand we assume that the testator by his use of the words "total estate" referred to his "total residuary estate," there is at once eliminated any apparent inconsistency in the testamentary pattern. It is clear that he had the impact of the federal estate tax in mind. He could assume correctly that this tax would consume approximately a third of the residuary estate and there would remain relative equality as between the "Dartmouth trust" and the "family trust." Some of the seeming ambiguity stems from the fact that the testator was attempting to divide his residuary estate and simultaneously to include an awkward substitute for the usual type of "tax clause," as well as an apportionment of the burden of taxes as between the two residuary estate funds. We are satisfied, however, that he intended that all state taxes, like bills and expenses, should be borne by the *whole* residuary estate, whereas the federal estate tax should diminish only the "family trust."

Moreover, the impact of the widow's waiver should properly fall proportionately upon the beneficiaries of the residuary estate in the absence of clear and express directions to the contrary by the testator. None can be found in this will. By the application of this rule, the unanticipated waiver is permitted to cause the least possible disruption to the testator's basic testamentary design. We conclude that after payment of all bills and expenses, the Hiden legacy, the net amount due the widow and all state taxes to

be paid by the estate, the balance will be divided with one-third constituting the "Dartmouth trust" and the remaining two-thirds being applied first to the payment of that portion of the federal estate tax which is to be borne by the estate, and second to the creation of the "family trust." We are satisfied that however inept and inaccurate the language of the will may have been, this was the result the testator intended.

The last issue for consideration involves the possibility of acceleration of the "Dartmouth trust" as a result of the widow's rejection of the will. The resolution of this issue requires an examination of the terms of this trust. In effect, the trustee was required:

1. During the life of the widow to pay her so much of the income of *both* trusts as *in its discretion* would best provide for her comfortable support, happiness and well-being.

2. During the life of the wife to pay to the testator's son Thomas and to Thomas' daughter so much of the income from *both* trusts, not required by the wife, as in the trustee's discretion might be needed for their support, education of children and burial expenses.

3. Upon the death of the wife to transfer any accumulated income in the "Dartmouth trust" to the "family trust," and to pay the principal fund to Dartmouth as a memorial fund in honor of the testator's deceased son.

The applicable rule was stated by the late Chief Justice Fellows in *U. S. Trust Co.* v. *Douglass et al.,* 143 Me. 150, 155. "This court has permitted acceleration of contingent remainders, after statutory waiver by the widow or widower, in those instances where the will has not expressed

or shown a contrary intention, where the testator's objectives have been attained, where the remaindermen were definitely ascertainable, and where the expressed or presumed intention of the testator was that the enjoyment of the remainders should not for any reason be postponed." In *Douglass* the court denied acceleration and rested its decision on two grounds, one of which has application here. In that case, as in this, the widow had limited rights to income during her lifetime, the balance of income being payable to other relatives. As the court said at page 156, "He (the testator) shows a desire to provide a continuing income for blood relatives during the lifetime of the widow." Dartmouth readily admits that its claim of acceleration rests on the assumption that as a practical matter the widow, if she had not waived, would have claimed and received the entire income from the Dartmouth fund. The argument follows that in reality there were no intervening interests between the widow and the ultimate remainderman, Dartmouth College. We do not make this assumption, and, as we read the will, neither did the testator. He not only provided rights to income in members of his family other than the widow but he went further and, anticipating that there might be unused income even after all these requirements were met, provided further that such income should be transferred to the "family trust." In short, he evidenced a clear intention that all the income during the life of the widow should benefit the family, either by direct payments to them, or by transfer to the "family trust." Acceleration now would defeat that intention and violate the governing rules laid down in *Douglass*.

> *Remanded to the justice below for judgment in accordance with this opinion and for the allowance of costs and reasonable counsel fees to be paid out of the estate.*