**NATIONAL NEWARK & ESSEX BANK**

v.

**Percy Grier HART et al.**

Supreme Judicial Court of Maine.

Sept. 6, 1973.

Collins & Crandall, by Samuel W. Collins, Jr., Wayne R. Crandall, Rockland, for plaintiff.

David A. Nichols, Camden, Peter P. Sulides, Rockland, Richardson, Hildreth, Tyler & Troubh by Edwin A. Heisler, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

This case comes to us on report.

Halsey Tichenor Adams died on February 26, 1971. His Will, including three Codicils thereto, was allowed by the Knox County Probate Court on March 16, 1971.

Because the Will and Codicils did not specify what beneficiaries should bear the burden of payment of the federal estate tax and state inheritance tax, National Newark & Essex Bank, as executor, commenced an action for instructions from the Knox County Probate Court on January 26, 1972.

That Court directed the National Newark & Essex Bank as executor,

". . . to pay the state inheritance tax on each of the bequests and legacies under the Will of Halsey Tichenor Adams and to deduct the inheritance tax attributable to each of the specific legacies before making distribution."

The Court further directed the executor,

". . . to pay the inheritance tax attributable to the temporary interest of Dorothy Blanck Hokkanen, Percy Grier Hart, and James Leigh Dinsmore, out of corpus, without reimbursement by the same Dorothy Blanck Hokkanen, Percy Grier Hart, and James Leigh Dinsmore."

With respect to the federal estate tax, the Court directed the executor,

". . . to pay the entire amount of the federal estate tax out of residue, and charge the proportionate share of the federal estate tax to each of the specific legatees under Item I of the Third Codicil of Halsey Tichenor Adams. The income beneficiaries under Paragraph Second of the Third Codicil of Halsey Tichenor Adams, dated October 30, 1964, are not required to reimburse corpus for the federal estate tax attributable to the temporary estates."

Upon appeal from that decree the presiding Justice in the Superior Court, sitting as the Supreme Court of Probate, reported the action directly to the Law Court, pursuant to Rule 72(b), M.R.Civ.P.

The single issue before us is whether or not the burden of federal estate and state

inheritance taxes should be imposed upon an income beneficiary.

Within the factual framework of this case we hold that an income beneficiary is not liable for any portion of the federal estate tax.

With regard to the state inheritance tax, we hold that, absent statutory or testamentary direction, Maine law does not require an income beneficiary to bear the burden of that tax.

The terms of Halsey Adams' Will and Codicils, when viewed in their entirety, reveal the following testamentary scheme:

After providing for payment of "just debts, funeral charges and expenses of administration," Testator disposed of the remainder of his estate in trust, the income therefrom to be paid quarterly to appellee during her lifetime. At her death, the remainder was to be divided as follows: $1,000.00 to the Knox County General Hospital, and all of the residue to the General Mission of the Episcopal Church.

The first Codicil to the Will added three general legacies and altered the disposition of the charitable remainders so that the Knox County General Hospital's share was increased from $1,000.00 to one-third of the principal, the original residuary remainder interest was decreased to one-third of the principal, and three Episcopal Churches in Knox County were given the remaining one-third to be divided equally.

The second Codicil eliminated the legacy to the General missions of the Episcopal Church, and increased that of the Knox County General Hospital to two-thirds of the remainder. More significant for this case, however, was the modification of appellee's share, which limited her income interest to her lifetime "but not beyond December 31, 1999."

In the third and last Codicil, the Testator finally limited appellee's interest to the year 2000, increased some general legacies, added others, and designated several other minor income beneficiaries.[1]

The Will and Codicils were silent as to which of the beneficiaries should bear the burden of the federal estate and state inheritance taxes.

Citing our decision in Old Colony Trust Co. v. McGowan, et al., 156 Me. 138, 163 A.2d 538 (1960), the Judge of Probate said:

"While the Law Court has concluded that equitable contribution is proper in certain circumstances, it has never required an income beneficiary to contribute to the payment of State inheritance taxes and the Federal estate tax."

Accordingly, he ordered the executor to deduct the inheritance tax attributable to each *specific* bequest before distribution, but to make no deduction in the case of the *income* beneficiaries. Similarly, the executor was directed to charge the proportionate share of federal estate taxes to each of the specific legatees, but to impose no such burden on the income interests.

The charitable remaindermen appealed.

This report followed.

Appellee's position rests on four arguments. She correctly asserts that neither this Court nor any other court has ever required an income beneficiary to bear the burden of federal estate taxes, absent statutory or testamentary direction.

Secondly, she argues that imposition of such a burden on her interest, would be violative of the intention of Testator.

Thirdly, she maintains that the very nature of a temporary interest and the computational problems inherent in its valuation for tax purposes makes it inequitable and impractical to require an income beneficiary to contribute to payment of estate taxes.

And lastly, she construes the Maine statutes to require payment of inheritance tax-

---

1. We need not consider the income interest of James Hamilton Hart since he predeceased Testator.

es out of corpus without reimbursement from an income beneficiary.

The issues here before us are of first impression in this State.

This Court has never had occasion to discuss what apportionment, if any, of estate taxes, should be made between income and remainder interests.

In 1945, the Legislature amended R.S. 1944, c. 142, § 39, to provide for equitable apportionment of estate taxes in certain specified circumstances.[2] However, the last paragraph of that statute directed that,

" . . . in cases where a trust is created or other provision made whereby any person is given an interest in income . . . the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates."

This statute, creating a rule of equitable apportionment but expressly excluding its application as between temporary income interests and remainder interests, was repealed two years later.[3]

We think it significant that even when the Legislature had occasion to adopt a rule requiring equitable apportionment in some situations,[4] they expressly rejected its application as between an income beneficiary and remainder interests.

There is no express provision of the Internal Revenue Code for apportionment of the federal estate tax.[5] The Supreme Court of the United States has held that applicable state law should govern the distribution and ultimate burden of the tax. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942).

Prior to *Riggs,* the general rule with respect to imposition of the federal estate tax, was that it must ultimately fall on the residuary estate, unless the Will or statute was to the contrary. Amoskeag Trust Co. v. Dartmouth College, 89 N.H. 471, 200 A. 786 (1938); First National Bank v. Hart, 383 Ill. 489, 50 N.E.2d 461 (1943); Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N.E. 265 (1919).

Support for the burden-on-the-residue principle has been based, in part, on the courts' interpretation of the nature of the federal estate tax, and in part on what the courts believed to be the Congressional intention. Since Sec. 2002 of the Internal Revenue Code (26 U.S.C. § 2002) requires an executor to pay the tax, and directs him to pay it before distribution of the estate, some courts have viewed the tax as in the nature of an expense of administration, a charge against the decedent's estate, to be borne by the residue. 37 A.L.R.2d, Later Case Service 169.

This Court followed such reasoning when it construed the phrase "charges of settlement" under R.S.1954, Ch. 170, Sec.

---

2. P.L.1945, ch. 269, § 39–A.

3. P.L.1947, ch. 220.
   While the Legislative Record is silent on the point, the reason for the repeal of the apportionment rule is revealed in an address entitled, "Important Statutory Changes Made by the Ninety-Third Maine Legislature," delivered before the Maine Bar Association in the summer of 1947. (Report of the Maine State Bar Association Vol. 36, p. 162).
   In his remarks, Representative Leonard F. Williams, a Member of the Judiciary Committee of the Legislature (later Justice of the Maine Superior Court), explained that the principal reason for the repeal of Ch. 269 was the difficulty encountered in enforcing the apportionment part of the statute. Because of the problem of administering the rule of equitable apportionment, he reported, "We repealed that law," supra at 166.
   This report suggests that the Legislature had attempted an apportionment rule, found it unsatisfactory, and deliberately returned to the prior practice of leaving the question of what apportionment if any there should be to the resolution of the courts on an ad hoc basis.

4. The repealed statute, by its terms, did not affect the apportionment of inheritance taxes.

5. Internal Revenue Code of 1954, § 2205.

**516**

20 [now 18 M.R.S.A. 851] to embrace "all of the ordinary costs and expenses of administration of the estate," including the federal estate tax. Old Colony Trust Co. v. McGowan, 156 Me. 138, 145, 163 A.2d 538, 542 (1960).

This Court in *Old Colony* observed that "there can be no 'residue' for 'distribution' until after the depletion caused by the federal estate tax has occurred," and consequently concluded that the tax must first be deducted as a charge of settlement before the "distributable assets" from which a widow's statutory share is taken may be computed.

We believe the reason no court has ever required an income beneficiary to contribute to payment of federal estate taxes in the absence of statutory or testamentary direction, lies in the nature of the tax, particularly as it is distinguished from an inheritance tax.

■ The federal estate tax is a tax on the transfer of a *whole estate* by a decedent.

It is a tax on the privilege and process of transmitting testator's entire property.

It is clear that Congress contemplated payment of such a tax from the gross estate before distribution.

■ By contrast, an inheritance or succession tax is one which attaches to the taking of property by *specific legatees* designated by testator. Y.M.C.A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924). Such a tax is not one on the general estate of a decedent, but on the right or privilege of receiving or taking it from the decedent's estate. Merrill Trust Co. v. Johnson, 159 Me. 45, 118 A.2d 75 (1963).

■ An estate tax, unlike an inheritance tax, is, therefore, by its nature not payable by legatees or out of legacies as such, but is imposed upon the entire estate, payable as an expense of administration and not levied upon the particular devise, bequest,

or distributive share of individual beneficiaries. Re Glover's Estate, 45 Hawaii 569, 371 P.2d 361 (1962); Tapp v. Mitchell, (Okla.) 352 P.2d 900 (1960); Seattle-First National Bank v. Macomber, 32 Wash.2d 696, 203 P.2d 1078 (1949).

Thus, in keeping with the nature and purpose of an estate tax as being imposed upon the whole estate and not upon the receipt of a specific legacy, the conclusion of many courts is that in the absence of statute or testamentary provision to the contrary, the ultimate impact of such a tax devolves upon the residuary estate. Union & New Haven Trust Co. v. Sullivan, 142 Conn. 685, 116 A.2d 908 (1955); Re Estate of Phillips, 1 Ill.App.3d 813, 275 N.E.2d 685 (1971); Morristown Trust Co. v. McCann, 19 N.J. 568, 118 A.2d 16 (1955); Re Pepper's Estate, 307 N.Y. 242, 120 N.E.2d 807 (1954); Re Garcia's Estates, 9 Ariz.App. 587, 455 P.2d 269 (1969). See 37 A.L.R.2d, Later Case Service 176, § 3, for Annotation.

Several states which have acted in this area since 1942, have seen fit to modify the burden-on-the-residue rule by apportionment statutes under the principle of equitable contribution. On the other hand, many states continue to apply the principle.

Some do so on the basis of stare decisis.

Others suggest Congressional intent compels it.

■ We do so here, because in the absence of express statutory direction, and in the absence of express or clearly implied direction of testator, that an income beneficiary be responsible for contribution to the tax, the rule in Maine is that an income beneficiary is not required to bear any proportionate share of the federal estate tax.

In the only decision that has ever reached the specific question now before us, the Supreme Court of Washington held that the federal estate tax was to be paid out of the corpus and not from a lifetime

income interest. In re Williamson's Estate, 38 Wash.2d 259, 229 P.2d 312 (1951).

Like Maine the State of Washington has no apportionment statute, and in that case as here, there was no provision in the Will for apportionment of the estate tax. We adopt the reasoning of the Court, that since the tax is one upon the transfer of an entire estate at death, and payable as an expense of administration, it should be paid out of corpus without reimbursement by an income beneficiary.

It has been said in support of requiring contribution to payment of the estate tax, that principles of equity dictate that *every part* of the decedent's estate bear a proportionate share of the tax burden. Accordingly, appellants urge that any result which would exonerate Mrs. Hokkanen from the burden of estate taxes would be incompatible with the doctrine of equitable contribution as it has been articulated by this Court in Bragdon v. Worthley, 155 Me. 284, 153 A.2d 627 (1959), and Old Colony Trust Co. v. McGowan, 156 Me. 138, 163 A.2d 538 (1960).

We disagree.

The doctrine of equitable contribution never has been interpreted, by this or any other court, to embrace the requirement of contribution to federal estate taxes by a testamentary income beneficiary.

*Bragdon,* supra, was a case on report, in which the trustee sought equitable contribution from inter vivos transferees for a pro rata share of the federal estate tax. We delineated the basic principles of the doctrine of equitable contribution and noted its traditional recognition and frequent application in areas of the law other than that of federal estate taxation. Williams v. Coombs, 88 Me. 183, 33 A. 1073 (1895), (contribution granted one tenant in common who had made repairs on the common property); Maine Trust & Banking Co. v. Southern Loan & Trust Company, 92 Me. 444, 43 A. 24 (1899), (contribution imposed ratably upon the stockholders of an insol-

vent corporation being sued by a creditor); and suits for contribution brought by one co-surety against one or more other co-sureties; Howe v. Ward, 4 Me. 195 (1826); Smith v. Morrill, 54 Me. 48 (1866), and Danforth v. Robinson, 80 Me. 466, 15 A. 27 (1888).

The Court went on to observe, however, that the principle also had been applied with respect to federal estate taxes, citing three cases to support that broad contention. In re Mellon's Estate, 347 Pa. 520, 32 A.2d 749 (1943); Kapnek v. Kapnek, 38 N.J.Super. 268, 118 A.2d 701 (1955); Carpenter v. Carpenter, 364 Mo. 782, 267 S. W.2d 632 (1954).

*Mellon,* supra, dealt with a situation where three inter vivos transferees were held jointly and severally liable for the direct payment of the federal estate tax, under the theory that the gifts were made in contemplation of death, and the Court held that, where collection had been made from two of the transferees, the doctrine of equitable contribution applied to fix liability on the third transferee.

*Kapnek,* supra, also involved the question of contribution from insurance and inter vivos beneficiaries. The Court there recognizing that the "normal presumption . . . is that the tax should be paid out of the residue of the estate, without reimbursement from the beneficiary," nevertheless held that where testator specifically directed that all taxes on property passing under the Will "or otherwise" should be paid out of the principal of the estate, but the estate was insufficient to pay such taxes, the recipients of assets not coming into the hands of the executor could be charged as if the payment of taxes made by them on the particular funds had been directed by testator to be made out of those particular funds. *Kapnek,* supra, at 702 of 118 A.2d.

*Carpenter,* supra, was another case in which the issue as to apportionment of the federal estate tax, involved the ultimate burden of the tax as between estate and

non-testamentary property. The Supreme Court of Missouri held that, in the absence of contrary provisions in decedent's Will, the life insurance beneficiaries should pay their proportionate share of the tax.

Following the reasoning in these cases, we held, in *Bragdon*, that the inter vivos beneficiaries of assets which were included in the taxable estate should contribute to payment of the federal estate tax proportionate to value of assets received under the theory of equitable contribution.

In *Old Colony Trust*, supra, we were urged to extend the rule in *Bragdon*, to exonerate a widow who had elected against the Will from federal estate tax burden. We refused to do so, limiting that decision to the proposition that "equitable principles require contribution *under certain circumstances*." 156 Me. 138, 147, 163 A.2d 538, 544 (1960). (Emphasis supplied).

█ The very foundation of the doctrine of equitable contribution rests in the "creative functions of the Chancellor," 2 Pomeroy, Equity Jurisprudence, Sec. 411 (5th Ed. 1941), particularly the power to direct the rights and liabilities of the parties, guided by principles of natural justice and equity. It therefore follows that, in the absence of statutory provisions binding this Court to specified rules of apportionment, it is our duty to resolve each case in light of the particular circumstances involved, requiring contribution only where it would be equitable in fact.

In the circumstances disclosed in this case, we have concluded that to require contribution by Dorothy Hokkanen would not be equitable in fact. If liability for the federal estate tax were to be imposed upon Mrs. Hokkanen, she would be required to discharge that obligation, computed to be approximately $110,000 according to appellee's brief, in one of three ways:

a) by payment of the tax in a lump sum, risking death before being fully reimbursed from income,

b) by reimbursement of corpus by turning over the full income earned for the next thirteen years (one-half the term of her interest), or

c) by proration of her share of the tax over the full term of years, still losing half or more of the full amount of the bequest.

Moreover, there is the consideration that in any event, her income interest would automatically be reduced by a diminution in corpus to pay the federal estate tax.

In view of these circumstances it cannot be said that to impose liability for the tax on an income beneficiary would be equitable in fact.

The thrust of appellee's second point, that burdening her interest with either the federal estate tax or the state inheritance tax would be contrary to testator's intent, is grounded in the long-established rule of the Court that we must construe a Will by ascertaining and effectuating the intent of its creator. Norway National Bank v. Oates, Me., 297 A.2d 898 (1972); Dow v. Atwood, Me., 260 A.2d 437 (1969).

█ It is testator's intent, at the time of execution, which governs the rights and liabilities of the parties, Thompson v. Dunham, Me., 239 A.2d 649 (1968), and that intent may be garnered by examining the entire instrument. In re Edwards' Estate, 161 Me. 141, 210 A.2d 17 (1965).

It is the appellee's contention that the absence of a tax clause creates ambiguity in the expression of testator's intention and allows the Court to resolve that doubt by examining the entire instrument, including prior revoked provisions. Cassidy v. Murray, 144 Me. 326, 68 A.2d 390 (1949); Bar Harbor Banking & Trust Co. v. Preachers' Aid Society of the Methodist Church, Me., 244 A.2d 558 (1968).

Appellants urge that there is no ambiguity in the Will, and, therefore, no legal basis for resort to parole testimony, citing Bryant v. Bryant, 129 Me. 251, 258, 151 A.

429, 432 (1930). It is their position that Halsey Adams is presumed to know the law of Maine, Houghton v. Hughes, 108 Me. 233, 79 A. 909 (1911), and that law, as appellants read our decision in Bragdon v. Worthley, supra, mandates equitable contribution among all the beneficiaries.

■ The Court is persuaded that Halsey Adams' failure to include a tax clause, coupled with ambiguous language in the Will to the effect that, *after* the payment of "expenses of administration," "all the rest, residue, and remainder" of his estate was to be paid to his trustees with income to appellee, casts enough doubt on the issue of his intent as to imposition of the tax burden, as to warrant our examination of the entire instrument and extrinsic circumstances.

The evolution and language of the Will and Codicils manifest an intent that Dorothy Hokkanen was to be the prime object of his bounty and that she was to benefit from this substantial bequest in her early years.

Since, as appellants correctly point out, Halsey Adams may be presumed to have known the law of Maine at the time of execution, and anticipated that that law would govern the disposition of his estate, several points appear to be relevant. He knew he could direct apportionment of the tax burden by testamentary provision, but did not include a "tax clause" as such. He knew that the rule of equitable contribution had been applied in certain instances, but never to require payment of federal estate taxes by an income beneficiary. He knew that, in the absence of statute or testamentary provision to the contrary, the general rule was that federal estate taxes were paid out of corpus before distribution and without reimbursement by specific legatees.

■ Employing the canons of construction and presumption in law which aid us in the ascertainment of a testator's intent, we are compelled to conclude that to require Dorothy Hokkanen to reimburse corpus for the federal estate taxes would be violative of the implicit intention of Halsey Adams.

Consistent with the language of the Will and with the rationale of those states, including Maine, applying the burden on the residue rule, that "expenses of administration" include federal estate tax, it is reasonable to conclude that Halsey Adams intended that the "residue" from which Dorothy Hokkanen's interest was drawn, was to be constituted *after* payment of the federal estate tax, and never intended that contribution to that tax would then be required from her.

If that were the result, she would be faced with the three alternative methods of payment previously discussed, none of which could reasonably be said to have been the intent of the testator, all of which are onerous, inequitable and fraught with computational problems.

Providing for non-apportionment between temporary and remainder interests has been the universal rule adopted by almost every state which has passed apportionment statutes, and dealt with the particular problem.[6] The proposed Uniform Estate Tax Apportionment Act also provides for no apportionment, and that rule is explained as being "based upon the convenience in trust administration of paying the tax from principal, which avoids accounting problems incident to amortization, as well as on the possible hardship inherent in a requirement of immediate payment by an income tax beneficiary."[7] Practical problems inherent in valuing temporary interests, and computing the tax share to be apportioned between temporary and remainder interests, are manifest.

6. See Appendix: Apportionment of Death Taxes: A Comprehensive Survey with Proposed Statute, 45 Texas L.Rev. 1348, 1401 (1967).

7. The Proposed Uniform Estate Tax Apportionment Act, 43 Minn.L.Rev. 907, 933 (1959).

■ We turn now to the issue of appellee's liability with respect to the state inheritance tax. Unlike estate taxes, inheritance taxes are governed by statute in Maine. 36 M.R.S.A. 3634 and 36 M.R.S.A. 3582. 36 M.R.S.A. 3634 clearly subjects a temporary interest to the state inheritance tax:

"When any interest in property less than an estate in fee is devised or bequeathed to one or more beneficiaries with remainder to others or is created by gift or grant, and the interest of one or more beneficiaries is subject to said tax, the value of the prior estate shall be determined by the appropriate table . . ., and a tax imposed at the rate or rates prescribed in sections 3462, 3463 and 3464 for the class to which the devisee, legatee, donee or grantee of such estate belongs . . ."

36 M.R.S.A. 3582 provides for the deduction of the tax assessed under 3634:

"An executor, administrator or trustee holding property subject to the tax imposed by chapters 551 to 567 shall deduct the tax therefrom or collect it from the legatee or person entitled to said property; and he shall not deliver property or a specific legacy subject to said tax until he has collected the tax thereon . . . An executor . . . upon payment of any tax assessed under section 3634 . . . shall, unless otherwise provided in the instrument creating the taxable interests, deduct the tax so paid from the whole property devised, bequeathed or given."

This section has never been construed by the Maine Courts, although it is patently a provision for *collection* of taxes *assessed* under other sections.

Appellee contends that the statute requires collection of inheritance taxes imposed on an income interest from corpus, construing "whole property devised, bequeathed, or given" to mean the whole estate before distribution.

Appellants invoke principles of equity to support their position that all beneficiaries, including an income beneficiary, must directly bear the burden of state inheritance taxes, and read the Maine statutes to so provide. They construe "whole property devised, bequeathed or given" to an income beneficiary to mean life estate or estate for years, whichever the case may be. Moreover, they argue that should we relieve appellee of the tax burden, their charitable interests, exempt by statute (36 M.R.S.A. 3461), would bear the full impact.

We observe that Sec. 3634 is concerned with the valuation of temporary estates.

The purpose of this section of the tax statutes is to determine the value of an estate less than fee according to actuarial tables, and compute the state tax accordingly.

Section 3582, on the other hand, directs the personal representative to either deduct from the specific property or collect from the specific legatee the taxes imposed generally under Sec. 551–567, but "deduct the tax so paid from the *whole property* devised" those imposed particularly under Sec. 3634.

If the Legislature had intended to allow an executor to collect state inheritance taxes from an income beneficiary, the last sentence of Sec. 3582 would be unnecessary, since that alternative is already presented in the general directive of the first part of the statute.

■ Nothing in a statute should be construed as surplusage, if a reasonable construction supplying meaning and force is possible. United States v. A. S. Kreider Co., 313 U.S. 443, 61 S.Ct. 1007, 85 L.Ed. 1447 (1941).

■ A reasonable interpretation of Sec. 3582 is that it provides for a *different means of paying* the Maine inheritance tax in the case of a temporary interest, viz., payment out of corpus and before distribution.

This construction takes into account the fact that an income interest is automatically reduced by a reduction in corpus to pay taxes, and consequently, is not incompatible with the traditional view of inheritance taxes as an excise or specific legatees' right to receive.

■ Therefore, in the absence of any statutory requirement that Dorothy Hokkanen contribute to payment of the state inheritance tax, and lacking testamentary direction to that effect, the only basis for our requiring contribution in this instance would be if it were compelled by principles of fundamental fairness. For the same reasons we found it to be inequitable and onerous to require contribution of the federal estate tax, we conclude that it would be unfair to compel contribution of the state inheritance tax.

We are, therefore, of the opinion that the position of the appellee with respect to both the federal estate tax and the state inheritance tax is well taken, and she need not reimburse corpus for payment of either tax.

The instructions given by the Probate Court for Knox County were correct.

The appeal, therefore, must be denied. The entry must be,

Appeal denied. Remanded to the Superior Court sitting as the Supreme Court of Probate for further action consistent with this opinion and for the allowance of costs and reasonable counsel fees to be paid out of the estate.

All Justices concurring.

WEBBER, J., sat at argument but retired before this opinion was adopted.